ANACONDA' COPPER MINING CO., RESPONDENT, v.
JUNOD, STATE TREASURER, APPELLANT.

(No. 5,502.)

(Submitted June 17, 1924. Decided July 7, 1924.)

[227 Pac. 1001.]

*Taxation—Net Proceeds of Mines—Constitutionality of Statute.*

Taxation—Net Proceeds of Mines—Taxes and Insurance Premiums on
Reduction Works not Deductible in Computing Net·Proceeds.
1. *Held,* that taxes and fire insurance premiums paid upon milling
and reduction works owned and operated by a mining company in
connection with its mining operations are not deductible as a part of
the cost of extracting the minerals and metals from ores taken
from its mines in computing the net proceeds of mines for the purpose of arriving at the amount of license tax payable under sections
2344–2355, Revised Codes of 1921, construed in the light of the provisions of sections 2088–2096, relating to the taxation of mines and
net proceeds.

Same—Net Proceeds of Mines—Statute—Constitutionality.
2. *Held,* that the above construction of the statutes referred to does
not violate the provision of section 3, Article XII of the Constitution
providing that the annual net proceeds of mines and mining claims
shall be taxed "as provided by law," nor the provision of section 1
of that Article requiring the legislature to levy a uniform rate of
assessment and taxation under such regulations as shall secure a
just valuation of all property.

Constitution—Uniformity Clause—Taxation—Absolute Uniformity not Required.
3. Absolute uniformity or equality in the imposition of a tax being
unattainable, courts will not declare a statute invalid as in contravention of section 1, Article XII of the Constitution, unless it is made
to appear that it was framed on a plan or principle not calculated
to produce uniformity or equality, or that its administration will
result in such flagrant injustice as to evidence an entire disregard of
the constitutional requirement.

*Appeal from District Court, Lewis and Clark County; W. H.
Poorman, Judge.*

ACTION by the Anaconda Copper Mining Company against
O. H. Junod, as State Treasurer. Judgment for plaintiff and
defendant appeals. Reversed and remanded, with instructions
to sustain demurrer to complaint.

1. Validity of license tax imposed upon owner of premises for extracting mineral, see note in **Ann. Cas.** 1918A, 678.

*Mr. Wellington D. Rankin,* Attorney General, and *Mr. L. V. Ketter,* Assistant Attorney General, for Appellant, submitted a brief; *Mr. Rankin* argued the cause orally.

*Mr. L. O. Evans, Mr. D. M. Kelly, Mr. John V. Dwyer* and *Mr. John A. Groeneveld,* for Respondent, submitted a brief; *Mr. Kelly* argued the cause orally.

Taxes and insurance are proper charges as a part of the overhead expense of the operation of a business. (Whitten on Valuation of Public Service Corporations, 210, 224; Wyman on Public Service Corporations, sec. 1154; *Bonbright* v. *Geary,* 210 Fed. 44, 54; *Consolidated Gas Co. of New York* v. *Newton,* 267 Fed. 231, 254; *City of Providence* v. *Gas Co.,* P. U. R. 1921D, 842; *Stone* v. *Wright Wire Co.,* 199 Mass. 306, 85 N. E. 471, 473; *Spencer* v. *Spencer,* 183 N. Y. Supp. 870, 873.)

Since the laws of the state of Montana require the payment of taxes upon the milling and reduction works of the plaintiff, and since ordinary and usual business management impels the owners of property to adequately insure the same against loss, and particularly when the property is being managed by officers of a corporation handling and managing the property for the benefit of the stockholders of the corporation, certainly they must be held to be properly chargeable as a part of the operating costs of the milling and reduction works, and are therefore moneys expended in the extraction of metals and minerals from the ores of these mines.

HONORABLE S. D. McKINNON, District Judge, sitting in place of MR. JUSTICE COOPER, disqualified, delivered the opinion of the court.

Action to recover taxes paid under protest. The facts as disclosed by the complaint and stipulation of the parties entered into at the time of the submission of the general demurrer are: That the plaintiff, Anaconda Copper Mining Company, a corporation, is the owner and operator of the Butte Hill

mine and Nettie mine, both situate in Silver Bow county; that it is also the owner and operator of milling and reduction works situate in Cascade and Deer Lodge counties, Montana; that the state board of equalization computed the net proceeds of the Butte Hill mine for the year ending May 31, 1923, to be $2,978.742.68, and assessed a license tax of $44,682.14; that the net proceeds of the Nettie mine for the same period were determined by the said board to be $253,640.49, and a license tax was assessed at $3,805.60; that the taxes paid by plaintiff on its milling and reduction works during said period were the sum of $322,202.69; that the minerals and metals were extracted from the ores taken from said mines in said milling and reduction works of plaintiff; that in its statement to the said board, as provided by section 2089, Revised Codes of 1921, the plaintiff claimed as a deduction from the gross yield in dollars and cents realized from the ores extracted from the Butte Hill mine the sum of $150,685.86, as taxes paid on the milling and reduction works, and the sum of $70,622.61 for fire insurance upon said works; that the plaintiff claimed a deduction from the gross moneys realized from ores extracted from the Nettie mine of $7,136.10 for taxes on said milling and reduction works, and the sum of $1,554.41 for fire insurance, and that said deductions represent that portion of the entire amount of moneys expended by plaintiff for taxes and insurance that the cost of extraction of the metals and minerals from the ores of each of said mines bore to the cost of the extraction of the metals and minerals from all ores treated in said milling and reduction works for said period. The state board of equalization refused to allow these deductions. Thereupon the license tax was paid unconditionally in the following amounts: For Butte Hill mine, $41,362.51; and for the Nettie mine, $3,675.25; that the amounts paid under protest were $3,319.63 and $130.36 for the Butte Hill mine and Nettie mine respectively, the same representing the deductions claimed by the plaintiff for a portion of the taxes and fire insurance premiums on its milling and reduction works.

The learned trial judge overruled the demurrer, and, the defendant electing to stand thereon, judgment was entered for plaintiff and from which defendant appeals.

The sole question for determination is whether taxes and [1] fire insurance premiums paid upon milling and reduction works are deductible as a part of the cost of extracting the minerals and metals from ores taken from mines in computing the net proceeds of mines.

The point raised is one of first impression in this state.   We are unable to find any decisions in reference thereto, and hence resort must be had to the statutes to ascertain the intent of the legislature.   This is the fundamental duty of the courts in every instance of statutory construction.

The metalliferous mines' license tax is set forth in sections 2344 to 2355, inclusive, Revised Codes of 1921.   These sections provide for an annual mines' license tax of $1, together with an additional sum of one and one-half per cent of the net proceeds of all mines or mine property in this state.   The net proceeds upon which the license tax is imposed are calculated and computed in the same manner and upon the same basis as net proceeds of mines are determined for purposes of general taxation.   (Sec. 2347.)   The general taxation law in reference to mines and mining property is found in sections 2088 to 2096, inclusive, Revised Codes of 1921.   Section 2089 makes it imperative upon mine operators each year, between the first and tenth days of June, to file with the state board of equalization a verified statement of the gross yield of metals or minerals from each mine owned or worked by them and from which the board determines the net proceeds for the purposes of taxation.   The statement must show:

"1. The name and address of the owner or lessee of the mine.

"2. The description and location of the mine.

"3. The number of tons of ore or other mineral products or deposits extracted and treated or sold from the mine during the period covered by the statement.

"4. The amount and character of such ores, mineral products or deposits, and the yield of such ores, mineral products or deposits to such person, corporation, or association so engaged in mining, in constituents of commercial value; that is to say, the number of ounces of gold or silver, pounds of copper or lead, tons of coal, barrels of petroleum, or other crude or mineral oil, or other commercially valuable constituents of said ores or mineral products or deposits, measured by standard units of measurement, yielded to such person, corporation, or association so engaged in mining, during the period covered by the statement.

"5. The gross yield or value in dollars and cents.

"6. Actual cost of extracting same from mine.

"7. Actual cost of transporting to place of reduction or sale.

"8. Actual cost of reduction or sale.

"9. Actual cost of marketing the product, and conversion of same into money.

"10. Cost of construction, repairs and betterments of mines, and costs of repairs and replacements of reduction works.

"11. The assessed valuation of reduction works for the calendar year next preceding the year within which such return is made."

And, so far as applicable here, section 2090 is as follows:

"The state board of equalization shall thereupon calculate and compute from said return the gross product yielded to such persòn, corporation or association so engaged in mining, and its gross value in dollars and cents of every mine for the year preceding the first day of June, and also shall calculate and compute the net proceeds in dollars and cents of said mine yielded to such person, corporation, or association so engaged in mining, which said net proceeds shall be ascertained and determined by subtracting from the value in dollars and cents of the gross product thereof the following, to-wit:

"All moneys expended for necessary labor, machinery and supplies needed and used in the mining operations and developments; for improvements, repairs and betterments necessary

in and about the working of the mine; for costs of repairs and replacements of the milling and reduction works used in connection with the mine; depreciation in the sum of six per cent of the assessed valuation of such milling and reduction works for the calendar year ending December 31, and immediately preceding; also all money expended for transporting the ores, mineral products or deposits from the mine to the mill or reduction works or to the place of sale, and for extracting the metals and minerals therefrom, and for marketing the product and the conversion of the same into moneys; but moneys invested in the mines and improvements during any year, except in the year immediately preceding such statement, must not be included in such expenditures, and such expenditures shall not include the salaries, or any portion thereof, of any person or officers not actually engaged in the working of the mine or superintending the management thereof. * * * ''

And by section 2096, *supra,* we find a further limitation of the powers of the board in arriving at "net proceeds" as follows: "Nothing in this Act must be construed so as to exempt from taxation the surface ground, improvements, buildings, erections, structures, or machinery placed upon any mine or mining claim, or used in connection therewith, or supplies used either in mills, reduction works or mines."

In order to arrive at a solution of the question presented, it is necessary for us to give effect to all of the above statutes, and from an inspection of them it will be readily seen that, so far as extracting the ore from the mine is concerned, they are clear and explicit, and the deductible items are specifically mentioned. In other words, the terms "actual cost" of extracting the ore from the mine have a definite and fixed meaning. To illustrate: If liability insurance was carried by an operator, on men employed in extracting ore, the cost thereof could not under any circumstances be deducted. Neither could taxes on machinery. (Sec. 2096, *supra.*) Therefore, in this instance, at least, the legislature left no doubt what it meant by the words "actual cost of extract-

-ing the same (the ore) from the mine." If this premise
is correct, and we think it is, can it be that the legislature in-
tended to fix a more elastic provision by using the words
"actual cost of reduction or sale" (subd. 8, sec. 2089, *supra*),
and in connection therewith, the language set forth in section
2090, *supra*, "also all money * * * for extracting the
metals and minerals therefrom" [the ore]? We think not.
We are of the opinion that the words "actual cost" in both
instances were used in a restricted sense; that is to say, in
case of extracting ores from the mine, not all, but only the di-
rect, costs and expenses were contemplated as deductible items.
And likewise nothing more was to be taken into consideration
in extracting the metals and minerals from the ores. If the
legislature had intended that taxes and fire insurance premiums
could be taken into consideration as deductible items, it could
have easily said so. The fact that the statute is wholly silent
upon these items indicates to us that they were not to be con-
sidered in any instance as part of the actual cost in arriving
at net proceeds of mines for the purpose of taxation.

Moneys expended for taxes and fire insurance premiums are
not in the strict sense actually expended for extracting metals
and minerals from the ore, any more than salaries of officers not
actually engaged in the working of a mine or superintending the
management thereof. Metals and minerals may be extracted
from ores if insurance is not carried on reduction works.
And neither were taxes so considered by the legislature in
arriving at the actual cost of reduction. This will be observed
by section 2096, *supra*. It will be noted by this section that in
arriving at net proceeds of mines reduction works shall not
be exempt from taxation. And if we were to hold that a
company owning a mine and also a reduction works could de-
duct a portion of its taxes as part of the cost of extracting
metals and minerals from the ore, it would be in effect grant-
ing an exemption, at least to a certain extent, of the reduction
works from taxation. This cannot be done.

It was no doubt the intention of the legislature to prescribe a definite and fixed method for arriving at net proceeds of mines. This it has done (secs. 2088 to 2096, Rev. Codes 1921) by adopting the actual cost basis for deductions. And, were we to place any other construction upon the statutes, the same would be indefinite and uncertain, and in fact there would exist an open field for deductions which in our opinion was never intended.

But it is contended that, if this interpretation is placed on [2, 3] the statutes *supra,* then it conflicts with section 3, Article XII, of the state Constitution, which provides among other things: " * * * And the annual net proceeds of all mines and mining claims shall be taxed as provided by law." With this contention we cannot agree. This provision of the Constitution expressly authorizes taxation of annual net proceeds of mines as provided by law, and the mines' license tax is based thereon (sec. 2347, Rev. Codes 1921), and under our construction of the statutes this is the utmost the legislature has sought to do.

Finally, it is urged that, if defendant's contention is upheld and taxes and insurance are not deductible items, then the same is in conflict with section 1 of Article XII of the state Constitution, which provides, *inter alia,* that the legislature shall levy a uniform rate of assessment and taxation and prescribe such regulations as shall secure a just valuation of all property. It is contended that a company owning a mine and not a reduction works may be compelled to pay, in the rate charged for reduction, a certain portion of overhead charges in excess of the actual cost of reduction, and that the net proceeds of mines in this instance would be different than if a company owned a mine and also a reduction works. This argument also would be true in the case of two separate companies owning mines and each owning a reduction works. The actual cost of reduction may in one instance be greater than the other, through management of the business, and therefore

the net proceeds of the mines in each case would be different. In either case, the cost of reduction would be the money actually expended for extracting the metals and minerals from the ores. So, in the case of a company owning a mine and not a reduction works, the custom rate paid by it for extracting metals and minerals from ores would be an actual cost to it. It has no control over the price charged. It must be paid. It is an actual cost to it, even though it is not an actual cost to the owner of the reduction works. It was the aim and intention of the legislature to · fix some definite and uniform basis for the determination of net proceeds of mines for taxation purposes. This it has done by authorizing deductions of· only actual costs. It was not its intention to permit deduction of every conceivable item of expense. It disclosed this intention by enacting the statutes *supra*. Therefore we are of the opinion that our construction does not conflict with this constitutional provision. This provision does not demand that absolute uniformity exist. The general rule in this regard is set forth in 37 Cyc., at page 736, as follows: "It is a matter of common experience that absolute equality in the imposition of a tax is not attainable. Nor is this the meaning of the constitutional provision. All that it requires is an aim and intention on the part of the legislature, in framing the tax law, to approximate to the ideal of absolute equality as closely as the nature of the subject and the necessities of practical administration will permit. Hence the courts will not pronounce a statute invalid on this ground unless it appears that it was framed on a plan or principle not calculated to produce equality and uniformity, or that its administration will result in such flagrant injustice as to evidence an entire disregard of the constitutional requirement."

We are therefore constrained to answer the question involved herein in the negative, and thereby hold that taxes and insurance are not deductible items in determining the net proceeds of mines.

The judgment is reversed and the cause is remanded, with instructions to sustain the demurrer to the complaint.

*Reversed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, GALEN and STARK concur.