No. 12289

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

PFIZER, INC., successor to CHAS. PFIZER
and CO., INC., a corporation,

Plaintiff and Respondent,

-vs-

MADISON COUNTY, a political subdivision
of the STATE OF MONTANA, et al.,

Defendants and Appellants.

---

Appeal from:  District Court of the Fifth Judicial District,
Honorable Frank E. Blair, Judge presiding.

Counsel of Record:

For Appellants:

Edward Jene Bell argued, Helena, Montana.
Chester L. Jones, County Attorney, Virginia City,
Montana.

For Respondent:

Gough, Booth, Shanahan and Johnson, Helena,
Montana.
Ward Shanahan argued, Helena, Montana.

---

Submitted:  December 4, 1972

Decided:  JAN 19 1973

Filed: JAN 16 1973

Thomas J. Kearney
Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This appeal is from the district court of the fifth judicial district, county of Madison. The court, sitting without a jury, found plaintiff had paid excess taxes and ordered defendant State Board of Equalization to refund such excess taxes. From that judgment, defendant appeals.

The trial court made rather exhaustive findings of fact and conclusions of law. The findings of fact, as such, are not challenged individually; but rather, the issues, as will hereinafter appear, encompass the conclusions of law as to the meaning of the metal mines act as it applies to the mining of talc.

Plaintiff is Pfizer, Inc., hereinafter called Pfizer, successor to Chas. Pfizer and Co., a corporation, which owns and operates the Treasure State Mine in Madison County, from which it mines raw talc ore. Pfizer also owns and operates the talc milling and reduction works some thirty miles away near Barretts in Beaverhead County. Pfizer hauls the ore mined at the Treasure State Mine, in trucks, to a stockpile at the Barretts plant. The raw talc is then put through a beneficiation stage of processing, which is a process of washing, screening, sorting and crushing the raw talc by means of hand labor and centrifugal machines. The beneficiated talc is placed in a pile at the Barretts plant in pieces of ore ranging up to 8 inches. The talc, in this state, is called beneficiated talc. There is a market for talc in that stage at a price of $22 per ton, and Pfizer sells approximately 2% of its talc in that stage. The remaining 98% of the beneficiated talc is further milled in Pfizer's roller mill, hammer mill, jet mill and calcining operation at Barretts. This process reduces the pieces of beneficiated talc to various fine sizes. Pfizer then sells the talc under various trade names and packaging to its customers who use the talc in manufacturing paint, ceramics, cosmetics, plastics, insecticides, glass, paper, and other products.

The State Board of Equalization, hereinafter called the Board, determined that Pfizer's net proceeds of mines tax should be based upon the value of the talc from sales on the open market. Pfizer contends that its milling and reducing operation at Barretts is a "manufacturing" process as distinguished from a "mining" process and that its net proceeds tax should be based upon the value of the talc at the beneficiation stage, and not at the value which the talc has after it is further milled and reduced.

Pfizer's predecessor in interest, Tri-State Minerals Company, operated a beneficiation plant at Barretts. But, Tri-State sold and shipped all of its beneficiated talc to Utah, where the product was further milled and reduced. The Board determined that Tri-State's net proceeds tax was based on the value of the beneficiated talc, which is the same standard which Pfizer wants to be used.

Pfizer exhausted its administrative remedies and each year brought actions claiming refunds for the tax years 1968, 1969 and 1970, which actions were consolidated for trial purposes. From the judgment for Phizer ordering refunds for back taxes, the Board appeals.

The Board raises three issues for review. The principal issue concerns whether Title 84, Chapter 54, R.C.M. 1947, imposes the net proceeds of mines tax on the profit earned by Pfizer through all stages of its mining, including its milling and reduction operation.

The Board contends that Pfizer's milling and reduction operation is nothing more than an integrated mining operation, which begins with the digging of large chunks of raw talc ore and ends after the milling stage with finely ground particles of raw talc ore. It maintains this operation by Pfizer is not a "manufacturing" process and Title 84, Chapter 54, R.C.M. 1947, requires the determination of Pfizer's net proceeds of mines tax on the basis of the value of its raw talc ore product, which it sells subsequent to the milling operation.

The Board bases its argument on Section 3, Article XII, Montana Constitution, which provides:

"All mines and mining claims, both placer and rock in place, containing or bearing gold, silver, copper, lead, coal or other valuable mineral deposits, after purchase thereof from the United States, shall be taxed at the price paid the United States therefor * * * and all machinery used in mining, and all property and surface improvements upon or appurtenant to mines and mining claims which have a value separate and independent of such mines or mining claims, and the annual net proceeds of all mines and mining claims shall be taxed as provided by law."

The legislature in compliance with this provision of the Constitution enacted section 84-5401, R.C.M. 1947, which provides in pertinent part:

"All mines and mining claims, both placer and rock in place, containing or bearing gold, silver, copper, lead, coal or other valuable mineral deposits, after purchase thereof from the United States, shall be taxed at the price paid the United States therefor * * * and all machinery used in mining, and all property and surface improvements upon or appurtenant to mines and mining claims, which have a value separate and independent of such mines or mining claims, and the annual net proceeds of all mines and mining claims, shall be taxed as other personal property."

Subsequent sections in Chapter 54, Title 84 spell out the net proceeds tax in more detail. Based on this Constitutional and statutory authority, the Board levied the tax on the mining products of Pfizer.

In its argument the Board cites Northern Pacific Ry. Co. v. Musselshell County, 54 Mont. 96, 169 P. 53. That decision interprets Section 3, Article XII, of the Montana Constitution, and explains that there is a necessity for taxing mining property differently than ordinary real property, and that mining property must be looked on as both real and personal property. It is real property in regard to the surface value, but is regarded as personal property as to the minerals.

The Board argues that if this net proceeds tax does not extend to the value of the product after it is milled and reduced to fine talc, the intent of the Constitution and the legislature would be thwarted. The Board contends it was the intent of the legislature

that the net proceeds tax extend all the way through the mining process to the point where the product is marketed, sold and converted into money. Further, that both stages in Pfizer's process, the beneficiation stage and the milling stage must be considered in determining the net proceeds tax.

The district court heard the Board's argument, examined all the evidence introduced by the Board, and did not agree with its position. This Court has also carefully read the record, examined the evidence, and reaches the same conclusion as the district court---the Board has imposed the tax beyond its scope of authority.

The Board admits Pfizer's predecessor in interest, Tri-State Minerals Company, operated a beneficiation plant. Yet, Tri-State was charged a net proceeds tax only on the value of the beneficiated talc. Pfizer moved its reduction and milling plant to Montana from Utah and the Board changed its position, so that the net proceeds of the mining operation extends all the way through the manufacturing process. The Board determined that because Pfizer integrated all of its facilities, they all became part of the mining operation, and the net proceeds of mining tax was the gross value of all of the products which Pfizer is producing in Montana.

The Board cites Foreman v. Beaverhead County, 117 Mont. 557, 161 P.2d 524, in support of its position. We find Foreman does not support the Board's position and, if anything, would support Pfizer's position. There, this Court found that a tailings dump long after the mine ceased operation was not part of the net proceeds of a mine and therefore could not be taxed as such. We find a somewhat similar situation here, the talc after it has gone beyond the beneficiation stage, is no longer subject to the net proceeds of a mine tax.

The tax in question should be applied for the purpose already declared by this Court. In Byrne v. Fulton Oil Co., 85 Mont. 329, 334, 278 P. 514, this Court said:

> "The framers of the Constitution, on account of the
> difficulty in arriving at a fair value of mining
> property, adopted as a substitute the method pro-
> vided for by section 3, Article XII, supra, for taxing
> the 'annual net proceeds.' The net proceeds tax is
> simply a tax in lieu of, or a substitute for, the
> ad valorem tax on the value of mines or mining in-
> terests. [Citing cases]

> "It is well settled in this state that the mineral
> contents of a mine may not be taxed in situ, but
> taxation must be on the annual net proceeds."

The Constitutional and legislative intent was to create a tax
in lieu of an "ad valorem" property tax. This is complicated be-
cause of the different types of mining and mineral substances en-
countered in Montana. But, the scope of the tax is the net proceeds
of the mine. Here, the net proceeds of the mining process is the
beneficiated talc. The talc is taken from the earth; it is
washed so that dolomite and other rocks are separated from it;
and it is marketable in its crude washed form. That is the end
of the mining operation and that is what Pfizer will pay its net
proceeds tax on.

Pfizer is making many special products, all talc but in
specified form, for many customers by use of specialized machinery.
These products are used for face powder, paint, rice polishing,
pitch control in paper making, and ceramics. These special pro-
ducts are not to be included in the net proceeds of mines tax,
for if they were there would be no way of cutting off this tax.
The copper wire sold in a local store would be charged as the net
proceeds of mine tax to the company which originally mined the ore.
That is not done, and that was not the intent of the constitutional
provision. The intent was to tax the proceeds of the mine. When
such proceeds are milled or manufactured into other products, that
tax does not apply. A good example would be sapphires, a gem stone
found in Montana. It is the value of the uncut sapphire that is
taxed, not the value of the cut and polished stone subsequently
sold by a jeweler.

We find the net proceeds tax of Title 84, Chapter 54, R.C.M.
1947, does not apply to the talc once it has passed the beneficia-
tion stage.

The Board's second issue is that Pfizer may not deduct monies expended for operations subsequent to the beneficiation stage, if the profits from such operations are not included in the value of its net proceeds.

There does not appear to be any real issue here between the parties. Pfizer has filed two returns over each of the last few years, one computed on the theory that beneficiated talc was the end of the mining process; the other computed on the theory that the entire process was under the net proceeds tax as required by the Board. Now that we have found that the tax only applies to the beneficiation stage, Pfizer of course will not, and can not, deduct expenses of its final milling stage against its net proceeds tax. Where the net proceeds tax ends, there also ends the deductions for such tax. Only deductions for the mining operation will be allowed up through the beneficiation stage. All other expenses will be incurred as to the manufacturing process.

At this point, the Board contends that Pfizer is, in effect, getting deductions for "manufacturing" costs in paying the tax on the basis of "wash and sort" or beneficiation stage. The record does not contain a challenge to the figures presented by Pfizer and no evidence was offered by the Board which would show any deductions claimed to have been improper. If indeed there were deductions claimed that were improper, the Board had and has every opportunity to catch them in auditing and checking the returns.

The final issue is that the deposition of Vernon B. Miller and the cost of a transcript of proceedings before the State Board of Equalization, should not be charged to the Board.

The first part of the issue concerns the deposition of Vernon B. Miller, secretary of the Board. This deposition was taken by Pfizer, but it was admitted into evidence by stipulation of both counsel. Now the Board, after having agreed to admit the deposition, does not want to be charged with the cost of it. We find the district court did not err when it ordered the Board to pay for the deposition. Authority for such order is section 93-8618, R.C.M. 1947, which provides:

- 7 -

> "A party to whom costs are awarded in an action
> is entitled to include in his bill of costs his
> necessary disbursements, as follows: * * * the
> expenses of taking depositions * * *."

The deposition clearly falls with the scope of section 93-8618, R.C.M. 1947.

The Board argues that the deposition was for the benefit of Pfizer and therefore it is not chargeable as a cost and cites Davis v. Trobough, 139 Mont. 322, 363 P.2d 727. The situation in Davis was not the same since here the deposition was introduced into evidence, by agreement of both parties, and at that point was not solely for the benefit of Pfizer, but for the benefit of the court and both parties. The cost of the deposition will be levied against the Board.

The second part of the cost issue concerns the cost of a transcript of proceedings before the Board of Equalization. Pfizer states in its brief that it will withdraw its claim for this cost if such transcript is not used or considered by this Court in making its decision. Since such transcript was not used by the Court, the issue of the cost of its preparation is rendered moot by Pfizer's offer of withdrawal of the claim for its cost.

No error appearing, the judgment of the district court is affirmed.

_Wesley Castles_
                                    Associate Justice

We Concur:

_James T. Harrison_
Chief Justice

_Frank I. Haswell_

_Jim L. Daly_

Associate Justices.

- 8 -