No. 13524

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

CYPRUS MINES CORPORATION, a Corporation,

Plaintiff and Respondent,

-vs-

MADISON COUNTY, a political subdivision
of the State of Montana; ALICE FLAGER,
County Treasurer of Madison County; and
the DEPARTMENT OF REVENUE OF THE STATE
OF MONTANA,

Defendants and Appellants.

---

Appeal from: District Court of the Fifth Judicial District,
Honorable Frank E. Blair, Judge presiding.

Counsel of Record:

For Appellants:

R. Bruce McGinnis argued, Helena, Montana

For Respondent:

Kline and Niklas, Helena, Montana
John R. Kline argued, Helena, Montana

---

Submitted: January 17, 1977

Decided: MAR 7 1977

Filed: MAR 7 1977

*Thomas J. Kearney*
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

The Department of Revenue of the State of Montana (Department) appeals from the judgment of the district court, Madison County. At issue is respondent's net proceeds of mines tax, a tax in lieu of "ad valorem" property tax on net proceeds of its mines. Pfizer v. Madison County, 161 Mont. 261, 505 P.2d 399. The court, sitting without a jury, found plaintiff taxpayer was compelled to pay excess taxes when certain deductions on its net proceeds of mines statement were disallowed. The court ordered the treasurer of Madison County to refund the excess taxes.

Plaintiff is Cyprus Mines Corporation, (Taxpayer), an international corporation which owns and operates the Yellowstone and Beaverhead Mines, talc mines located in Madison County; a storage facility and wash plant located at Alder, Montana; and a grinding mill located at Three Forks, Montana. Taxpayer operates these three Montana facilities through Cyprus Industrial Minerals Company, which also has operations in Nebraska, California, Texas, Maryland, South Caroline, Georgia, Tennessee, Nevada and Ghent, Belgium.

Taxpayer mines talc at its Yellowstone and Beaverhead Mines. It transports the talc to its other facilities for processing by a grinding/upgrading procedure known as beneficiation. The beneficiated talc is either sold or further milled to various fine sizes. Talc is used in the manufacture of paper, paint, ceramics, catalytic converters, spark plugs, vinyl flooring, rubber, plastics, cosmetics and pharmaceuticals.

The present action stems from Taxpayer's filing its 1974 net proceeds of mines statement. The department disallowed Taxpayer's

deductions for net proceeds of mines tax and other taxes paid in 1973, marketing expenses, and cost of conversion into money. Taxpayer paid under protest that portion of the property tax relating to the disallowed deductions. It brought an action in the district court to recover $91,418.54 in purported excess taxes. The district court entered judgment for Taxpayer.

The Department of Revenue appeals and presents two issues for review:

1. Whether Taxpayer is entitled to deduct net proceeds of mines taxes and other taxes paid on the Yellowstone and Beaverhead Mines in 1973, in determining its net proceeds of mines tax for 1974?

2. Whether Taxpayer is entitled to deduct marketing expenses and cost of conversion into money in computing its net proceeds of mines tax when the expenses are incurred after the beneficiation stage or are not directly related to the cost of extracting talc?

Taxpayer contends the Department's first issue should be resolved in Taxpayer's behalf since it has consistently deducted taxes as a miscellaneous deduction in determining the net proceeds of its mines. Further, Taxpayer argues taxes are expenses actually required and necessary in mining and should be a deductible item as there is no specific legislative provision characterizing taxes as a nondeductible item.

A general rule of taxation is that an item may serve as a deduction only when the legislature specifically establishes the deduction. Anaconda Copper Mining Co. v. Junod, 71 Mont. 132, 227 P. 1001. A revenue statute allowing a deduction should be construed with specificity, as opposed to the rule of liberal construction which generally applies to revenue laws. State ex rel. Whitlock v. State Board of Equalization, 100 Mont. 72, 45 P.2d 684.

Title 84, Chapter 54, Mines-General Property and Net Proceeds Tax, R.C.M. 1947, section 84-5403 sets forth those items which the taxpayer may deduct from the gross yield of a mine in arriving at the net proceeds upon which the tax is calculated. There is no provision in section 84-5403 which would characterize taxes as a deductible item. Absent such specific language, we fail to find Taxpayer entitled to a deduction for taxes paid in 1973 in determining its net proceeds of mines tax for 1974.

The Department's second issue concerns the validity of Taxpayer's deductions for cost of marketing and conversion into money. Taxpayer contends due to the complexities of the talc industry it should be allowed to calculate these deductions by an allocation formula, rather than a cost accounting basis. Taxpayer has valued the net proceeds of the Yellowstone and Beaverhead Mines by comparing the sales of from these mines at the beneficiation stage to the total sales of the Cyprus Industrial Minerals Company and applying that ratio to the total marketing and conversion into money costs for Cyprus Industrial Minerals Company. Included in Taxpayer's cost of marketing and conversion into money are expenses for administration, production, engineering, accounting, data processing and research and development.

Taxpayer contends that authority for such an allocation procedure is provided in section 84-5403(6), R.C.M. 1947:

> "6. All moneys actually expended for transporting the ores, and mineral products or deposits from the mines to the mill or reduction works or to the place of sale, and for extracting the metals and minerals therefrom, and for marketing the product and the conversion of the same into money." (Emphasis added.)

The controversy in the instant case does not require a resolution as to the validity of deductions for cost of marketing and conversion into money. The statute allows such a deduction. Here, this issue necessitates a determination as to the validity of the allocation process by which Taxpayer arrived at its deduction.

This Court, in a determination of the procedure to be utilized in arriving at the net proceeds of mines in Anaconda Copper Mining Co. v. Junod, 71 Mont. 132, 140, 227 P. 1001, stated:

> "* * * It was the aim and intention of the legislature to fix some definite and uniform basis for the determination of net proceeds of mines for taxation purposes. This it has done by authorizing deductions of only actual costs. It was not its intention to permit deduction of every conceivable item of expense."

The language used in Anaconda Copper Mining Co. displays an intent to determine the net proceeds of mines by a definite and uniform method. On the other hand, Taxpayer's allocation formula contemplates expenses incurred not only by its Montana facilities, but by all of the facilities which comprise the Cyprus Industrial Minerals Company. Further, Taxpayer's allocation formula contemplates expenses incurred by the Taxpayer beyond the beneficiation stage as defined in Pfizer v. Madison County, 161 Mont. 261, 267, 505 P.2d 399.

In Pfizer the issue was at which stage of the processing of talc does the mining cease and the manufacturing or marketing begin. This, of course, determines the point and value at which the net proceeds tax is applied. The State Board of Equalization claimed the reduction operation was nothing more than an integrated mining operation and the value for the tax would be taken at the selling price, subsequent to the milling operation. The district

court held, and this Court affirmed, that the net proceeds tax does not apply to the talc once it has passed the beneficiation stage and further held:

> "* * * Only deductions for the mining operation
> will be allowed up through the beneficiation stage.
> All other expenses will be incurred as to the
> manufacturing process."

Taxpayer's allocation formula fails to meet the test of definiteness and uniformity contemplated in section 84-5403, R.C.M. 1947. Taxpayer failed to allocate the actual costs which it incurred in the mining of talc, when determining the net proceeds of its Yellowstone and Beaverhead Mines.

The judgment of the district court is reversed.

_____
Justice.

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.