No. 88-266

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

---

W. R. GRACE & COMPANY,
a corporation,

    Petitioner and Appellant,

  -vs-

DEPARTMENT OF REVENUE OF THE STATE OF
MONTANA; and THE STATE TAX APPEAL BOARD
OF THE STATE OF MONTANA,

    Defendants and Respondents.

---

APPEAL FROM: District Court of the First Judicial District,
      In and for the County of Lewis & Clark,
      The Honorable Henry Loble, Judge presiding.

COUNSEL OF RECORD:

  For Appellant:

    George T. Bennett argued; Helena, Montana
    Paul H. Frankel argued; Morrison & Foerster, New York,
    New York
    Terry B. Cosgrove argued; Luxan & Murfitt, Helena,
    Montana

  For Respondent:

    Paul Van Tricht argued; Tax Counsel, Dept. of Revenue,
    Helena, Montana

  For Amicus Curiae:

    Bruce W. Moerer; Montana School Boards Assoc., Helena,
    Montana

---

      Submitted: April 6, 1989
       Decided: August 18, 1989

Filed:

_____
       Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

W. R. Grace & Company appeals from an order of the District Court of the First Judicial District, Lewis and Clark County, upholding a ruling by the State Tax Appeal Board (STAB), which denied certain deductions claimed by Grace on its net proceeds of mines tax returns for the years 1977, 1978 and 1979. We affirm.

The following issues are raised on appeal:

1. Did the District Court err in holding that STAB properly disallowed certain deductions in the calculation of Grace's net proceeds taxes?

2. Did the Department of Revenue (Department) complete its deficiency assessment of Grace's 1977 and 1978 net proceeds taxes within the time allowed by law?

W. R. Grace & Company, a Connecticut corporation, owns and operates a vermiculite mine and related plant and facilities on Vermiculite Mountain, located in Lincoln County near the Kootenai River, approximately nine miles northeast of Libby. Vermiculite is a micaceous mineral, which must be expanded before being used in various construction materials.

After the vermiculite ore is extracted from an open pit mine on Vermiculite Mountain, it is transported to a "transfer point" and, from there, into mine processing facilities. Processing carries the mineral through a storage and blending facility into a wet mill, then through a dry screen plant to a sized product storage facility, bordering the Kootenai River. From that point, a conveyor transports most of the unexpanded mineral across the Kootenai to rail-loading facilities adjacent to the Burlington Northern railroad tracks, where it is loaded in bulk onto rail cars.

A small portion of the ore is hauled to separate facilities in Libby, owned and operated by Grace, where it is bagged and loaded onto rail cars. The unexpanded vermiculite is shipped FOB from these two points to expanding plants owned by Grace--none of which are located in Montana--or to expanding plants owned by third parties.

Grace maintains offices at both the mine site and the town of Libby. Personnel in the Libby office perform various administrative functions, e.g., accounting, procurement and payroll. A manager and assistant manager, who supervise the Libby employees as well as the employees working at the mine and milling facilities, also maintain an office in Libby.

The Montana facilities are part of Grace's Construction Products Division (CPD), located in Cambridge, Massachusetts, separate from Grace's corporate headquarters. The CPD manufactures and markets numerous commercial products for the construction and agricultural industries. It operates over one-half dozen plants in Canada and over 40 in the United States, although its only Montana plant is the mine and mill site on Vermiculite Mountain.

Grace timely filed its net proceeds of mines tax returns for the years 1977, 1978 and 1979. On the returns, Grace deducted the entire cost of the Vermiculite Mountain facilities and the Libby office. It also deducted a portion of the expenses incurred by the CPD in Cambridge.

The Department conducted an audit of the returns and concluded, among other things, that deductions for expenses incurred by the Libby and Cambridge offices were improper. Therefore, by letter dated August 7, 1981, the Department issued a proposed deficiency assessment. When an acceptable resolution of the issues could not be reached through assessment revision conferences between the parties, the

Department issued final notice of deficiency. Grace timely appealed the final decision to STAB.

After a hearing, STAB ruled that the majority of the expenses were not properly deducted as they were either:

1) not an actual cost of extracting the vermiculite;

2) incurred by employees not actually engaged in working or superintending the mine;

3) incurred past the point of beneficiation; or

4) not properly prorated between the Libby office and the plant facilities.

STAB did conclude, however, that a portion of the expenses were properly deducted. These included:

1) expenses incurred in activities related to the safety of the mine, whether incurred in Cambridge or on Vermiculite Mountain;

2) salary and benefits for the two managers who maintained offices in Libby because they were actually engaged in superintending the mine;

3) salary of the chief geologist because he was actually engaged in working the mine; and

4) legal and consulting fees for filing water rights claims and obtaining patents.

On June 11, 1987, Grace filed a petition for judicial review with the First Judicial District Court, Lewis and Clark County. The Department filed a cross-petition. The District Court upheld the STAB ruling in its entirety. Grace appeals from the District Court determination. The Department does not cross-appeal.

The standard of review governing appeals of administrative rulings, including those made by STAB, is codified at § 2-4-704, MCA. Department of Revenue v. Davidson Cattle Co. (1980), 190 Mont. 326, 330, 620 P.2d 1232, 1234-35. The standard is delineated as follows:

(1)  The review shall be conducted by the court without a jury and shall be confined to the record.

. . .

(2)  The court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.  The court may affirm the decision of the agency or remand the case for further proceedings.  The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(a)  in violation of constitutional or statutory provisions;

(b)  in excess of the statutory authority of the agency;

(c)  made upon unlawful procedure;

(d)  affected by other error of law;

(e)  clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record;

(f)  arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(g) because findings of fact, upon issues essential to the decision, were not made although requested.

Section 2-4-704, MCA.

The statute sets out two basic standards.  One, findings of fact will be upheld unless they are clearly erroneous, and two, conclusions of law will be upheld unless they constitute an abuse of discretion.  Swan Corp. v. Montana Dept. of Revenue (Mont. 1988), 755 P.2d 1388, 1389-90, 45 St.Rep. 998, 1000; City of Billings v. Billings Firefighters Local No. 521 (1982), 200 Mont. 421, 430-31, 651 P.2d 627, 632.

Neither party contests the valuation of the deductions declared by Grace nor whether Grace actually incurred the expenses claimed. Therefore, the question raised by Grace's first issue--whether the deductions are statutorily permissible--involves only a question of law. Likewise, the second issue presented for review--whether the deficiency assessment is barred by the statute of limitations--involves solely a question of law. Thus, we will use the broader "abuse of discretion" standard in our analysis of both issues.

I

Did the District Court err in holding that STAB properly disallowed certain deductions in the calculation of Grace's net proceeds of mines taxes?

The net proceeds of mines tax has been a part of the property tax scheme of Montana since 1864, preceding statehood itself. Faced with the difficulty of accurately measuring the value of undeveloped minerals in place, the territorial legislature adopted the net proceeds tax as a substitute for an ad valorem tax on the value of mines or mining interests. See Byrne v. Fulton Oil Co. (1929), 85 Mont. 329, 334, 278 P. 514, 517. The framers of the first state constitution incorporated the tax into that document at article XII, section 3. The current tax was separately codified in 1921 and, with the exception of some minor variations, the tax remains much as it was at that time. The 1972 Constitutional Convention eliminated the 1889 constitutional provision for the tax from the present constitution.

The tax is centrally assessed by the Department. Section 15-23-101, MCA. The producer or operator of the mine annually reports, on a form provided by the Department, the gross yield of the mineral, as well as various costs incurred

in the mining process.  Section 15-23-502, MCA. From the returns, the Department calculates the net proceeds of the mine by subtracting certain expenses from the value of the gross product.  Section 15-23-503, MCA. The Department then transmits the assessed value of the net proceeds to the county assessor, who records the value in the assessment book as class one property.  Sections 15-23-106 and 15-6-131, MCA.

At issue in this case is the deductibility of certain expenses claimed by Grace on its net proceeds returns. Section 15-23-502, MCA (1977), the statute in effect during the years in controversy, enumerates costs a taxpayer may declare on its net proceeds tax statement, including the following:

(6)   cost of extracting from the mine;

(7)   cost of transporting to place of reduction or sale;

(8)   cost of reduction or sale;

(9)   cost of marketing the product and conversion of same into money;

(10) cost of construction, repairs, and betterments of mines and cost of repairs and replacements of reduction works;

. . .

(12) cost of fire insurance and workers' compensation insurance.

Section 15-23-502, MCA (1977), is read in conjunction with § 15-23-503, MCA (1977).  The latter statute lists the items the Department subtracts from gross value to arrive at net proceeds, including:

(b) all moneys expended for necessary labor, machinery, and supplies needed and used in the mining operations and developments;

(c) all moneys expended for improvements, repairs, and betterments necessary in and about the working of the mine, except as hereinafter provided;

(d) all moneys expended for costs of repairs and replacements of the milling and reduction works used in connection with the mine;

. . .

(f) all moneys actually expended for transporting the ores and mineral products or deposits from the mines to the mill or reduction works or to the place of sale and for extracting the metals and minerals therefrom and for marketing the product and the conversion of the same into money;

(g) all moneys expended for fire insurance and workers' compensation insurance and for payments by mine operators to welfare and retirement funds when provided for in wage contracts between mine operators and employees.

Section 15-23-503(1), MCA (1977). The statute goes on to restrict the allowable deductions in the following manner:

(4) No moneys invested in the mines and improvements during any year except the year for which such statement is made and except as provided in this section may be included in such expenditures, and such expenditures may not include the salaries or any portion thereof of any person or officer not actually engaged in the working of the mine or superintending the management thereof.

Section 15-23-503(4), MCA (1977).

Grace maintains that § 15-23-503, MCA (1977), allows the deduction of all costs related to the vermiculite mine as long as they are necessary to the mining operation. Therefore, Grace argues, all general overhead, office and administrative expenses attributable to the mining process for which it has properly accounted are deductible, whether incurred at the mine site, Libby or Cambridge.

Grace reads the statute too broadly. The law does not permit the deduction of "every conceivable item of expense." Anaconda Copper Mining Co. v. Junod (1924), 71 Mont. 132, 140, 227 P. 1001, 1004. The net proceeds tax is not an income tax. It is a property tax. Its purpose is to arrive at a fair valuation of mining interests by using net proceeds as a proxy for the value of the mine itself. Byrne, 85 Mont. at 334, 278 P. at 517. Therefore, what may be properly deducted from net proceeds is construed restrictively. Only the direct costs and expenses of extracting the mineral are deductible. Anaconda, 71 Mont. at 138, 227 P. at 1004.

Certainly, overhead and administrative expenses incurred by the Cambridge and Libby offices are necessary in the sense that they contribute to the smooth functioning of the vermiculite mine. However, they are not necessary in the sense contemplated by the net proceeds tax. Overhead, office and administrative expenses, while properly deductible for arriving at taxable income, are not properly deductible for determining the value of this taxable property. Not only must expenses be needed and used in the mining operation before they may be deducted from net proceeds, they must also be a direct cost of extracting the mineral.

In addition, subsection (4) of § 15-23-503, MCA (1977), specifically provides that deductions shall not include "the salaries or any portion thereof of any person or officer not actually engaged in the working of the mine or superintending the management thereof." Many of the expenses Grace seeks to deduct are salaries of personnel who are not working or superintending the mine, e.g., accountants, systems analysts, financial planners and lawyers. While we do not doubt that these individuals are important to the mining operation, the statute simply does not allow the deduction of their salaries.

Grace relies on our decision in Cyprus Mines Corp. v. Madison County (1977), 172 Mont. 116, 560 P.2d 1342, for the proposition that necessary overhead, office and administrative expenses are deductible as long as the taxpayer uses a proper cost accounting system. Indeed, in Cyprus Mines, we denied the taxpayer's claims due to an improper method of allocating costs. However, the opinion does not stand for the proposition that a proper cost accounting system turns otherwise nondeductible expenditures into deductible expenditures. Before the items at issue may be subtracted from gross value to arrive at net proceeds, they must be needed and used in the mining operation as a direct cost of extracting the mineral. General overhead, office and administrative expenses are indirect costs, and, as such are not deductible--regardless of the accounting system employed by the taxpayer.

Our opinion today does not abrogate the general principle of Cyprus Mines. Expenses that are improperly acounted for will not be permitted. Thus, STAB did not abuse its discretion in concluding that computer use, electricity, telephone and transportation costs were not deductible because they were improperly prorated between the mine site and the Libby office.

Grace also contests STAB's failure to allow deductions for transporting and marketing the mine product. STAB disallowed these expenses because it found that they were incurred beyond the point of beneficiation.

Section 15-23-503(1)(f), MCA (1977), provides for the deduction of costs incurred in transporting the mineral from the "mines to the mill or reduction works or to the place of sale and for extracting the metals and minerals therefrom and for marketing the product and the conversion of the same into money." However, in Pfizer, Inc. v. Madison County (1973),

161 Mont. 261, 505 P.2d 399, we limited the deductions allowed by this subsection. In Pfizer, we rejected the State Board of Equalization's contention that the net proceeds tax extends all the way through the mining process to the point where the product is marketed, sold and converted into money. Instead, we held that the net proceeds tax applies only to the mining stage of the operation. Once the mineral passes the beneficiation stage--the pre-manufacturing phase of the mining process--the net proceeds tax no longer applies. Value added to the mineral from operations undertaken beyond the point of beneficiation is not included in the value of net proceeds. Therefore, deductions from such operations are not allowed.

> Where the net proceeds tax ends, there also ends the deductions for such tax. Only deductions for the mining operation will be allowed up through the beneficiation stage. All other expenses will be incurred as to the manufacturing process.

Pfizer, 161 Mont. at 267, 505 P.2d at 402.

Grace points out that our affirmance of the STAB decision may result in some inconsistent applications of the law. For example, STAB permitted deductions for costs associated with the safety of the miners even though these expenses were incurred by personnel who were not directly engaged in working or superintending the mine. Any inconsistencies, however, may be attributed to the fact that the Department did not appeal the STAB decision to this Court. Whether STAB properly permitted deductions for costs associated with the safety of the miners is not in issue here and we will not attempt to address the question.

With regard to the issues that have been properly raised on appeal, we find that STAB did not abuse its discretion. Statutes and case law do not permit the expenses Grace sought to deduct on its net proceeds of mines tax returns.

- 11 -

II

Did the Department complete its deficiency assessment of Grace's 1977 and 1978 net proceeds taxes within the time allowed by law?

By letter dated August 7, 1981, the Department issued its deficiency assessment of Grace's 1977, 1978 and 1979 taxes. Grace argues that, because the Department did not complete the assessment of the 1977 and 1978 taxes until more than two years after the returns were due, it was barred by the statute of limitations from pursuing any deficiencies in net proceeds taxes for these years. Grace does not raise the statute of limitations issue with regard to the 1979 taxes because the Department issued the deficiency assessment within two years after that return was filed.

Grace relies on Caterpillar Tractor Co. v. Department of Revenue (Mont. 1981), 633 P.2d 618, 38 St.Rep. 1245, to support its argument that a two-year statute of limitations applies to deficiency assessments of net proceeds taxes. In Caterpillar, we held that, in the absence of a specific statute of limitations governing the particular tax in question, the general two-year limitations period prescribed in § 27-2-211(1)(c), MCA, for a liability created by statute other than a penalty or forfeiture applied.

The tax examined in Caterpillar, however, differs from the tax in question here. In Caterpillar, we considered the corporation license tax, which is a self-assessing tax on corporate income. The tax in issue in this case, on the other hand, is the net proceeds of mines tax, which is a centrally assessed tax on property. Prior to 1983, the limitations period for assessment revisions of property taxes, including the net proceeds of mines tax, was found at § 15-8-601, MCA. Because a specific statute of limitations governed the mines net proceeds tax during the years in

question, the two-year limitations period found in §
27-2-211(1)(c), MCA, does not control this case.

Section 15-8-601, MCA, provides as follows:

> (1) Whenever the department of revenue discovers that any taxable property of any person has in any year escaped assessment, been erroneously assessed, or been omitted from taxation, the department may assess the same provided the property is under the ownership or control of the same person who owned or controlled if at the time it escaped assessment, was erroneously assessed, or was omitted from taxation. All such revised assessments must be made within 10 years after the end of the calendar year in which the original assessment was or should have been made.

The statute sets out two prerequisites. The factual situation must involve taxable property that has "escaped assessment, been erroneously assessed, or been omitted from taxation;" and, the property sought to be assessed must remain "under the ownership or control of the same person who owned or controlled it at the time it escaped assessment, was erroneously assessed, or was omitted from taxation." The circumstances of this case fulfill both conditions.

First, taxable property owned by Grace was omitted from taxation when Grace claimed statutorily impermissible deductions on its net proceeds of mines tax returns. In Butte & Superior Mining Co. v. McIntyre (1924), 71 Mont. 254, 229 P. 730, we noted that unlawful deductions taken by the taxpayer on its net proceeds of mines returns resulted in property omitted from taxation within the meaning of a predecessor to the present § 15-8-601, MCA. Here too, we hold that unlawful deductions claimed by a taxpayer on its net proceeds of mines tax returns allows taxable property to be omitted from taxation within the meaning of § 15-8-601, MCA.

- 13 -

Second, even though it had sold the vermiculite ore mined in 1977 and 1978 by the time the Department completed its deficiency assessment, Grace retained ownership and control of the property subject to taxation. This is because the "taxable property" contemplated by the statute is the mine itself. As we stated earlier, the net proceeds tax is an attempt to place an accurate fair market value upon the mine. The tax "is simply a tax in lieu of, or as a substitute for, [an] ad valorem tax on the value of mines or mining interests." Byrne, 85 Mont. at 334, 278 P. at 517. The tax measures the value of the mine itself, not merely the value of the extracted minerals. Therefore, as long as Grace owns the vermiculite mine, it retains control of taxable property subject to the ten-year limitations period for reassessment under § 15-8-601, MCA.

Grace also argues that the legislature's enactment of § 15-23-116, MCA, a comprehensive five-year statute of limitations for centrally assessed property, impliedly repealed the ten-year limitations period provided in § 15-8-601, MCA.

This Court looks disfavorably upon repeals by implication. State ex rel. Sol v. Bakker (1982), 199 Mont. 385, 392, 649 P.2d 456, 460. Without an express declaration by the legislature that an enactment repeals an existing law, a later statute will not repeal an earlier law unless the two are "plainly and irreconcilably repugnant to or in conflict with each other. . . " Johnson v. Marias River Electric Coop. (1984), 211 Mont. 518, 523, 687 P.2d 668, 671.

The legislature did not adopt the five-year statute, § 15-23-116, MCA, until 1983. The statute was made retroactive to taxes due after December 31, 1980. Act of March 23, 1983, ch. 194, § 3, 1983 Mont. Laws 389. The tax years at issue in this case, however, are 1977 and 1978. Therefore, even if

the statutes are repugnant to each other, a question we will not consider at this time, they cannot possibly conflict prior to 1981, as the five-year statute of limitations had no force or effect prior to that year. With regard to the 1977 and 1978 tax years, Grace's argument that § 15-23-116, MCA, impliedly repealed § 15-8-601, MCA, is without merit.

A ten-year statute of limitations governed the reassessment of Grace's net proceeds taxes for the years 1977 and 1978. Therefore, when the Department issued its deficiency assessment in 1981, it did so within the time allowed by law.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

- 15 -