No. 90-278

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

THE MONTANA DEPARTMENT OF REVENUE,
    Appellant and Respondent,
-vs-
KAISER CEMENT CORPORATION,
    Respondent and Appellant.

'90 DEC 11 AM 11 28
ED SMITH, CLERK
MONTANA SUPREME COURT
FILED

APPEAL FROM:    District Court of the Fifth Judicial District,
                In and for the County of Jefferson,
                The Honorable Frank M. Davis, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

                Michael S. Lattier, Gough, Shanahan, Johnson &
                Waterman, Helena, Montana  59624

        For Respondent:

                Geralyn Driscoll, Department of Revenue, Helena,
                Montana  59620

                                Submitted:  November 15, 1990

                                Decided:    December 11, 1990

Filed:

_____
                    Clerk

Justice John C. Sheehy delivered the Opinion of the Court.

On its face, § 15-8-601, MCA, allows the Montana Department of Revenue (DOR) to reassess property for taxation if originally the property escaped taxation, was erroneously assessed, or was omitted from taxation.

The power of DOR to reassess such property appears to be limited under § 15-8-601 to property still under the ownership or control of the same person who owned it when it escaped taxation, was erroneously assessed or omitted from taxation.

Relying on that limitation, the State Tax Appeal Board (STAB) granted summary judgment to Kaiser Cement Corporation, in effect annulling the assessment revisions by DOR for the tax years 1983, 1984 and 1985. The Department of Revenue appealed the STAB decision to the District Court, Fifth Judicial District, Jefferson County. The District Court reversed the STAB decision and remanded the cause to STAB for a decision on the merits, subject to the right of Kaiser to appeal under a Rule 54(b), M.R.Civ.P. certification. Kaiser has appealed to this Court, and on consideration we affirm the order of the District Court.

In the years pertinent here, Kaiser operated a cement plant near Montana City, in Jefferson County, and mined limestone from a nearby quarry to make its cement. The tax in dispute in this case is mine net proceeds property tax on the minerals severed from the limestone quarry.

Kaiser filed a return and statement of net proceeds for the tax years 1983, 1984 and 1985. For 1983, it reported a negative

2

value of its mining activity of $29,854.00; for 1984, a negative value of $57,563.00; and for 1985, a negative value of $75,463.00. The Department reviewed the returns on receipt and on or before July 1 in each succeeding year, transmitted to its agents in Jefferson County, a statement listing the assessed value of the net proceeds in 1983 at a zero value, for 1984 at a value of $6,539.13, and for 1985, again a zero value.

The Department later audited Kaiser's returns by examining its books and records in its office in San Francisco, California. Based on its audit, the Department determined that the mine net proceeds value of Kaiser for 1983 was $871,844.00; for 1984, $822,764.00; and for 1985, $499,301.00. After the audit, but before the Department issued the revised assessment, Kaiser sold its Jefferson County operations to Ash Grove Cement West. The Department issued its revised assessments on January 28, 1988.

Following the notification to Kaiser of the revised assessment, there was an exchange of information between the parties, and the Department conducted an assessment review conference respecting the revisions. Thereafter the Department issued a final determination of the mine net proceeds by a letter to Kaiser dated May 2, 1988. The final figures for the three years were those reported above.

Kaiser appealed to STAB and moved for summary judgment, contending that it was no longer the owner of the cement plant and quarry. STAB granted summary judgment based on the motion, and the

3

Department, as we said, appealed to the District Court, which reversed the STAB decision.

The mine net proceeds tax in Montana has a hoary history. It was enacted by the territorial government in 1864, and later incorporated in the 1889 Constitution. Though variously amended, the net proceeds tax is now codified at § 15-23-501 et seq., MCA.

(There are a number of statutes to which we will be referring in this Opinion. To avoid clutter, and for ease of reference, we attach as an addendum to this Opinion the statutes or pertinent parts thereof which must be considered in this case.)

The mine net proceeds tax arises because of the difficulty in arriving at a fair value of mining property. It is a tax created in lieu of an _ad valorem_ property tax. (Pfizer v. Madison County (1973), 161 Mont. 261, 266, 505 P.2d 399.) The mine net proceeds tax is one of seven centrally assessed taxes; that is, the taxpayers' returns are sent to the state office of the Department of Revenue instead of to the individual county offices.

At the outset, the mine net proceeds tax is self-assessed. The owner of a producer mine must on or before March 31 each year make out a statement of the gross yield or value of the metals and minerals produced by the mine in the preceding calendar year for which the statement is made. Section 15-23-502, MCA. Against the gross yield or value in dollars and cents, the mine owner (or lessee or operator) is allowed certain deductions set out in §§ 15-23-502 and 15-23-503, MCA. The Department of Revenue is required to calculate from the returns the net proceeds in the mine yielded

4

to the person engaged in mining. Section 15-23-503, MCA. The value so determined is then transmitted to the Department's agent in each county as the assessed value of the net proceeds from mines. Section 15-23-106, MCA. The taxes and any penalties assessed on mine net proceeds are a lien upon the interest of the operator of the mine, on the machinery and equipment used in operating the mine, and may also be collected by a civil suit. Section 15-23-504, MCA.

As a check on the returns made by mine operators for the purpose of net proceeds, the Department of Revenue was given the power at any time to examine the records of such mine owners or operators to verify the statements made in the returns. Section 15-23-521, MCA.

When the Department of Revenue assesses the mine net proceeds under § 15-23-101, MCA, it must then notify the owner in writing of the assessed value it has determined. Section 15-23-102, MCA. Upon such notice, the taxpayer may demand a review of the validity of the assessment. Thereafter there may be an assessment review conference, not subject to the Montana Administrative Procedure Act, but including the right of discovery prior to any assessment revision conference. Section 15-23-102(2)(b), MCA. An appeal from the final decision may be taken to the State Tax Appeal Board. Section 15-23-102(2)(c), MCA.

The conflict in this case arises from § 15-8-601, MCA. It provides that whenever the Department of Revenue discovers that any taxable property of any person has escaped assessment, been

5

erroneously assessed, or been omitted from taxation, the Department may assess the same, provided the property is under the ownership or control of the same person who owned it at the time it escaped assessment, was erroneously assessed, or was omitted from taxation. The same statute provides a ten year statute of limitation for such revised assessments.

Section 15-8-601, MCA, is a general statute, applicable to all taxable property. It appears to conflict with provisions specifically relating to centrally assessed property in that § 15-23-107, MCA, provides that "whenever the valuation of centrally assessed property is revised under 15-8-601, or 15-23-102(2)" the Department must notify its county agent of the revised assessment. Moreover, if the Department determines that a taxpayer has incorrectly reported a value for taxes, including mine net proceeds taxes, the Department's county agents, after notification by the Department shall add interest to the tax at a certain rate. Section 15-23-115, MCA. Finally, with respect to centrally assessed properties, no deficiencies may be assessed or collected unless notice of the additional tax proposed is mailed within five years of the date the return was filed. Section 15-23-116, MCA.

In its printed notices of revisions to Kaiser, and especially in its letters of January 28, 1988, and May 2, 1988, the Department advised Kaiser that the revised assessments were being issued under § 15-8-601, MCA. Kaiser relies on these statements, and insists that because it is no longer the owner of the cement plant and quarry, and was not at the time the revisions were issued, that it

6

cannot be held liable for the additional taxes. It relies particularly on W. R. Grace and Company v. Department of Revenue (1989), 238 Mont. 439, 779 P.2d 470. There this Court stated that for a revised or additional assessment under § 15-8-601, MCA, the taxable property must have "escaped assessment" and "must remain under the ownership and control of the same person who owned or controlled it at the time it escaped assessment." (779 P.2d at 476) Kaiser also contends that in Grace, this Court distinguished the net proceeds tax from a self-assessing tax, and stated that the ten-year limitation in § 15-8-601, MCA, is applicable. (779 P.2d at 476)

With respect to the applicable statute of limitations, and the conflict between §§ 15-283-601 and 15-23-116, MCA, the Department points out that the Grace opinion related to tax years 1977 and 1978, before the enactment of § 15-23-116, MCA. But we do not find any real conflict under Grace and other cases cited by Kaiser, because we determine that the legislative intent in view of all the statutes applicable allows the procedure followed by the Department in this case, and that to hold otherwise would lead to absurd results.

By statute (§ 1-2-102) and by case law, in the construction of statutes, those relating to particular subjects outweigh those related to general subjects. Department of Revenue v. Davidson Cattle Company (1980), 190 Mont. 326, 620 P.2d 1232. The statutes which relate to centrally assessed property, and particularly those which relate to mine net proceeds taxes, are entitled to greater

7

deference here than the general provisions contained in § 15-8-601, MCA.

In searching for the legislative intent, as we must in the construction of statutes, if the general and particular provisions are inconsistent, the latter are paramount to the former. O'Connell v. State Board of Equalization (1933), 95 Mont. 91, 25 P.2d 114; and the latter will prevail over the former to the extent of any necessary repugnancy between them. In re Stevenson's Estate (1930), 87 Mont. 486, 289 P. 566. Reasonable constructions must be adopted if possible, with deference shown to the interpretation given to the statutes by the officers or agencies charged with its administration. Department of Revenue v. Puget Sound Power and Light Company (1978), 179 Mont. 255, 587 P.2d 1282.

The specific provisions of statutes relating to mine net proceeds taxes must supersede any repugnancy in the ownership provisions of § 15-8-601, MCA. The DOR may audit for the purpose of determining the taxable value of net proceeds of mines. Section 15-8-104, MCA. It must calculate from the returns the net proceeds of the mine yielded to the person engaged in mining, § 15-23-503, MCA. It may "at any time" examine the records of any person pertaining to the yield of ore or mineral products so as to verify the statements. Section 15-23-521, MCA. It may revise the valuation of centrally assessed property under §§ 15-8-601 or 15-23-102(2), MCA. (Section 15-23-107, MCA.) It may conduct an assessment review conference. Section 15-23-102(2)(b), MCA. The Department has but five years from the date the return was filed

8

to assess and collect any deficiency. Section 15-23-116, MCA. The foregoing provisions are so specific relating to centrally assessed mine net proceeds taxes that the legislature could not have intended the ownership provision of § 15-8-601, MCA, to apply as in this case.

Especially, this case demonstrates the absurd result that might follow if we were to agree with Kaiser. Kaiser filed its 1986 mine net proceeds return on March 5, 1987, and sold the mine on April 17, 1987. Under Kaiser's interpretation, it would be possible for such a mine owner to report a negative value or zero value for its mine net proceeds for a taxable year, sell its property, and be exempt from any revised taxation following an audit of the true result. The District Court put it fairly succinctly in stating:

> What the Board, in this reviewing court's view did, was fail to harmonize or reconcile the § 15-8-601, MCA, with the Centrally Assessed Property Tax Statutes (Title 15, Chapter 23, MCA). Moreover, its order violates the statutory construction concept of the specific over the general, the result being that if the order stands, this State literally has no workable generally assessed property tax system, having created a number of meaningless acts.
>
> This Court cannot believe that such was the legislature's intent when it adopted the Centrally Assessed Property Statutes as an integral part of the tax structure. The mine net proceeds tax is a part of that structure. Darby Spar v. Department of Revenue, 217 Mont. 376, is one of a half-dozen cases confirming this principle.
>
> The process of reporting, auditing and assessing and statute of limitations, as provided for in Title 15, Chapter 23, is rendered meaningless by the Board adopting the taxpayer's literal interpretation of § 15-8-601, MCA.

We wish in this case to clarify, as we did in Steer v. Department of Revenue (decided _Dec. 11th_ ___, 1990), ___ Mont. ___, ___ P.2d ___, the standard of review pertinent in this cause. We have before us a pure question of law. Kaiser suggests that in reviewing STAB's decision, this Court will determine whether STAB's conclusion of law constitutes an abuse of discretion. This Court is the final Montana arbiter of questions of law, and it is free to rule as its determines the law to be. Particularly this is applicable to administrative legal conclusions:

> That conclusion of law is a determination of a legal question, which when reviewed by a court is subject to a broader scope of review than are findings of fact made by an administrative agency. City of Billings v. Billings Firefighters (1982), 651 P.2d 627, 200 Mont. 421. The expertise of courts in determining legal questions supersedes the deference owed to administrative determinations.

Department of Revenue v. Gallatin Outpatient Clinic, Inc. (1988), 234 Mont. 425, 429, 763 P.2d 1128, 1130.

We affirm the decision of the District Court, and agree with its order that this cause be remanded to the State Tax Appeal Board for the determination of the cause on its merits.

_____
John C. Sheehy
Justice

We Concur:

_____
Chief Justice

_____

_____

10

_(signatures)_

Justices

Addendum

**15-23-101. Properties centrally assessed.** The
department of revenue shall centrally assess each year:

. . .

(4)  the net proceeds of mines and of oil and gas wells;

**15-23-102. Independent appraisal option - notice of
assessment - opportunity for conference - appeal. . . .**

(2)(a)  After assessing property under 15-23-101, the
department shall notify the owner and any purchaser under
contract for deed of such property, in writing, of the
assessed value it has determined.

(b)  Within 20 days following notification, the taxpayer
may demand a review of the validity of the department's
assessment.  The department shall conduct an assessment
review conference, which is not subject to the contested
case procedures of the Montana Administrative Procedure
Act.  However, a party has the right of discovery prior
to any assessment revision review conference.  Upon
consideration following such conference, the department
may revise the assessment.

(c)  Appeals from the final decision may be taken to the
state tax appeal board.

**15-23-106. Transmission to the counties.**  (1)  On or
before July 1, the department shall transmit to its agent
in each county a statement listing:

. . .

(d)  the assessed value of the net proceeds and royalties
from mines and oil and gas wells in the county, as

11

determined under 15-23-503, 15-23-505, 15-23-515, 15-23-603, and 15-230-605; and . . .

**15-23-107. Amended assessment - transmission to counties.** Whenever the valuation of centrally assessed property is revised under 15-8-601 or 15-23-102(2), the department shall, within 15 days following the final decision or order, transmit a statement of the revised assessment to its agent or the county officer then having custody of the assessment book in the county where the property is located. The revision shall be immediately entered in the assessment book.

**15-23-116. Statute of limitations.** (1) Except as otherwise provided in this section, no deficiency may be assessed or collected with respect to the year for which a return is filed unless the notice of additional tax proposed to be assessed is mailed within 5 years from the date the return was filed. For the purposes of this section, a return filed before the last day prescribed for filing is considered as filed on the last day. If the taxpayer, before the expiration of the period prescribed for assessment of the tax, consents in writing to an assessment after that time, the tax may be assessed at any time prior to the expiration of the period agreed upon.

**15-23-501. Taxation of mines.** All mines and mining claims, both placer and rock in place, containing or bearing gold, silver, copper, lead, coal or other valuable mineral deposits, after purchase thereof from the United States, shall be taxed as all other land is taxed. All machinery used in mining and all property and surface improvements upon or appurtenant to mines and mining claims which have a value separate and independent of such mines or mining claims and the annual net proceeds of all mines and mining claims shall be taxed as other personal property.

**15-23-521. Examination of records by department.** The department of revenue may at any time examine the records of any person specified in this part as the records may pertain to the yield of ore or mineral products or deposit in order to verify the statements made by the person. If from the examination or from other information, the department finds any statement or any material part of a statement willfully false or fraudulent, the department must assess in the same manner as provided for in 15-23-503 or 15-23-515.

**15-8-601. Assessment revision - conference for review.** (1) Whenever the department of revenue discovers that

12

any taxable property of any person has in any year escaped assessment, been erroneously assessed, or been omitted from taxation, the department may assess the same provided the property is under the ownership or control of the same person who owned or controlled it at the time it at the time it escaped assessment, was erroneously assessed, or was omitted from taxation. All such revised assessments must be made within 10 years after the end of the calendar year in which the original assessment was or should have been made.