**Leonard S. BUSCH, Relator,**

v.

**COUNTY OF HENNEPIN, Respondent.**

**No. C7–85–600.**

Supreme Court of Minnesota.

Feb. 14, 1986.

814

J. Michael Dady, David A. Allgeyer, Minneapolis, for relator.

Thomas L. Johnson, Co. Atty., Robert T. Rudy, Asst. Co. Atty., Minneapolis, for respondent.

KELLEY, Justice.

By writ of certiorari, Leonard Busch challenges a determination of the Minnesota Tax Court that 17 greenhouses owned and used by him to grow flowers were real property subject to real estate taxation. We affirm the tax court.

1. This value is not disputed by the parties. The assessment does not include water pipes, sprinklers, incandescent and high intensity lamps, fans, natural gas carbon dioxide generators, thermostats, water and fertilizer tanks, and other such equipment.

Leonard S. Busch has conducted his flower growing business on 18.4 acres of land in the City of Plymouth since 1965. On the property are 17 greenhouses used primarily for growing roses. On January 2, 1983 the greenhouse structures were assessed as real estate with a value of $429,400 by the City of Plymouth's assessor.[1] Busch objected to characterization of the structures as real property. He considers the greenhouses to be part of the agricultural equipment necessary to produce flowering plants. He considers each greenhouse structure as an exterior shell of a piece of horticultural equipment called an "environmental growing chamber." Busch contends the sheltering function of a greenhouse is incidental to its main purpose: creation of an optimum environment for the production of plants. Hennepin County, on the other hand, contends that each greenhouse structure has all the attributes of a building—roof, walls, framing, and a base; and that each performs the traditional function of a building, to-wit: sheltering what is inside from the forces of nature.

Whether in 1983 the greenhouse structures were buildings, and therefore taxable as real estate, or whether they were agricultural "implements" or "equipment" exempt from taxation depends on an examination of relevant sections of several taxing statutes then in force.

The general rule found in Minn.Stat. § 272.01, subd. 1 (1982) is that all property, both real and personal, is subject to taxation by the state unless exempted by law. In 1983, agricultural tools, implements and machinery used by owners in pursuit of agricultural purposes were exempt. Minn. Stat. § 272.02, subd. 1(13) (1982).[2] For the purposes of taxation, the statutory definition of real property "includes the land itself * * * and all buildings, structures, and improvements or other fixtures on it."

2. This statute exempting agricultural tools was repealed by Act of April 26, 1984, ch. 593, § 1, 1984 Minn.Laws 1301, 1302.

Minn.Stat. § 272.03, subd. 1(a) (Supp.1983). The statutes likewise define what should not be considered real estate for taxation purposes:

> The term real property shall not include tools, implements, machinery, and equipment attached to or installed in real property for use in the business or production activity conducted thereon, regardless of size, weight or method of attachment.

Minn.Stat. § 272.03, subd. 1(c)(i) (1982).[3]

■ Finally, we are mindful of our scope of review in tax matters. Findings of fact of the tax court will not be disturbed if its decision is supported by the evidence as a whole. *See, e.g., Nagaraja v. Commissioner of Revenue,* 352 N.W.2d 373, 376 (Minn.1984); *Nelson v. County of Meeker,* 285 Minn. 527, 528, 172 N.W.2d 753, 754 (1969).

Relator and Dr. Richard E. Widmar, professor of horticulture at the University of Minnesota, testified on the function of greenhouses. Essentially, they contended greenhouses create an optimal controlled environment for growing plants year round by (a) maximizing natural sunlight, (b) controlling temperatures, (c) providing proper supplies of water, (d) circulating air, and (e) providing fertilizer to control nutrient levels in the soil. However, Dr. Widmar also conceded that a greenhouse "keeps rain out, insects out and thereby it keeps the diseases out as opposed to trying to grow things outdoors. It keeps the carbon dioxide in, you're trying to keep the humidity in, all in one big package." He readily conceded that the greenhouse structure itself does not manufacture light, water, nutrients or provide adequate air movement.

The tax court found as facts:

> 10. The greenhouses, which include the metal framing, glass or acrylic panels and cement base wall, are special purpose property which protects items from the forces of nature and serves the same shelter function as other buildings and structures.

> 11. The special environment inside the greenhouses is manufactured by various items of machinery and equipment which were not included in the assessment.

From those found facts, the tax court concluded that relator's greenhouses are real property subject to real estate taxes, and affirmed the determination of the assessor that they were subject to such real estate taxes.

In *Crown CoCo, Inc. v. Commissioner of Revenue,* 336 N.W.2d 272 (Minn.1983), we adopted the "functionality test" to be used in ascertaining whether the structure was to be exempt from taxation. In holding that a steel-framed, shingled-roof canopy installed over gasoline pumps at a self-service station was real estate, we there said:

> To be exempt as equipment, an item must perform functions distinct and different from the functions ordinarily performed by buildings and other taxable structures. * * * Although a canopy has no walls, it essentially serves the same shelter function as buildings and other structures to the extent that it protects persons and items from forces of nature.

*Id.* at 274 (citation omitted).

Relator would have us interpret the "functionality test" in *Crown CoCo* to mean the primary function of a structure. Thus, while conceding that a greenhouse performs some sheltering function, he argues that its primary function is to provide a controlled environment suitable only for plants. Therefore, he contends, a greenhouse is "equipment" because its primary function, that is, plant production, is "distinct and different from the functions ordinarily performed by buildings and other taxable structures." In advancing this argument, relator relies on two federal cases and a Wisconsin case involving greenhouses. Neither *Thirup v. Commissioner,* 508

---

3. The issue raised in the case at bar has been mooted for taxes levied in 1985 and later. Act of June 28, 1985, ch. 14, art. 3, § 4, 1985 Minn. Laws 2385 (codified as Minn.Stat. § 272.03, subd. 1(c)(iii)).

F.2d 915 (9th Cir.1974) nor *Stuppy, Inc. v. United States,* 454 F.Supp. 1378 (W.D.Mo. 1978), (the federal cases) are applicable because the issue in those cases was whether, under federal income tax laws and treasury regulations, greenhouses qualified for the federal investment tax credit. The federal statutes and treasury regulations use different definitions for buildings, structures, machinery, and equipment than do the Minnesota property tax statutes. Likewise, in *Wisconsin Department of Revenue v. Greiling,* 112 Wis.2d 602, 334 N.W.2d 118 (1983), the Supreme Court of Wisconsin, applying a "use or function" test, held that a greenhouse was exempt from that state's use tax, but in so doing, the court noted that it was not confronted with, and did not decide, the issue of whether a greenhouse was a building. The Minnesota Tax Court in *Union Grain Terminal Association v. County of Winona,* Nos. 34885 and 35970 (Minn.T.C. Dec. 15, 1983), held that malt houses and kiln buildings were, in large part, the exterior shells of equipment used to convert barley into malt. The finding of the tax court there was neither definitive nor is it precedent for this court. The tax court's analysis is difficult to reconcile with our rejection of similar reasoning by the tax court in *Crown CoCo.*

In *Crown CoCo,* we implied that the shelter function need not be the sole nor the primary purpose of the structure: "Although a canopy has no walls, it essentially serves the same shelter function as buildings and other structures *to the extent* that it protects persons and *items* from forces of nature." *Id.* at 274 (emphasis supplied).

In addition, weighing against relator are well-settled rules relating to tax exemption: the presumption is that all property is taxable and the burden of proof is on one seeking the exemption, and that exemption provisions are to be strictly construed. *See, e.g., Ideal Life Church of Lake Elmo v. County of Washington,* 304 N.W.2d 308, 312–13 (Minn.1981) (citing *Camping & Education Foundation v. State,* 282 Minn. 245, 164 N.W.2d 369 (1969)).

 In the light of the "functionality test" of *Crown CoCo,* and considering the rules governing construction of the tax statutes, we are unable to find that the tax court findings of fact and conclusions of law are clearly erroneous. To the contrary, they are clearly supported by the evidence as a whole. *See Nagaraja,* 352 N.W.2d at 376, *Nelson,* 285 Minn. at 528, 172 N.W.2d at 754.

Accordingly, we affirm.

PETERSON, J., took no part in the consideration or decision of this matter.