**Donald R. MANTHEY, Relator,**

v.

**COMMISSIONER OF REVENUE, Respondent.**

**No. C2–90–2351.**

Supreme Court of Minnesota.

May 3, 1991.

Mark J. Vieno, Minneapolis, for appellant.

James W. Neher, Sp. Asst. Atty. Gen., St. Paul, for respondent.

## OPINION

TOMLJANOVICH, Justice.

On certiorari, Donald H. Manthey, relator, appeals the decision of the Minnesota Tax Court, asserting that his status as an Alaskan resident relieved him of liability for Minnesota resident income taxes from 1981 through 1985. Affirming the order assessing income tax, penalties, and interest assessed against relator, the Minnesota Tax Court found relator had remained a domiciliary of the State of Minnesota while in the State of Alaska and, therefore, was responsible for Minnesota income taxes accrued during his absence. We affirm.

In May of 1976, Donald H. Manthey began working in Alaska on various construction projects related to the Alaskan pipeline. While in Alaska, Manthey registered to vote and voted in elections, obtained an Alaskan driver's license, performed jury duty, joined a fraternal organization, registered and licensed his car and trailer, purchased resident hunting and fishing licenses, purchased real estate, and engaged in everyday commerce. The State of Alaska certified Manthey as an Alaskan resident, which gave him a hiring preference in pipeline employment. In 1984 and 1985, the State of Alaska paid Manthey dividends from the Alaskan Permanent Fund. Between 1976 and 1985, Manthey spent most of his time in Alaska, visiting his wife and children in Minnesota only four to six weeks each year, the one exception being 1979, when Manthey returned to Minnesota because of a work shortage in Alaska. In 1986, when declining health forced his retirement, Manthey returned to Minnesota permanently. Throughout those years in Alaska, however, Manthey maintained significant ties with the State of Minnesota.

While away in Alaska, Manthey provided total financial support for his wife and two children in Minnesota. The moneys Manthey sent paid ordinary living expenses as well as upkeep and taxes on their property. Manthey maintained his Minnesota driver's license, which he used to purchase resident hunting licenses in Minnesota. He owned, licensed, and registered motor vehicles in Minnesota. He purchased and maintained rental property. Manthey kept a joint checking account in Minnesota, which listed his name and Minnesota driver's license number on the checks. Although Manthey commenced marriage dissolution proceedings in 1977, the matter was not pursued further.

Until 1981, Manthey and his wife filed Minnesota resident income tax returns even though Manthey spent most of his time in Alaska. After Alaska repealed its individual income tax, Act to Repeal Individual Income Tax, ch. 1, 1980 Alaska Sess. Laws (2d Special Session) (codified at Alaska Stat. § 43.20.012 (1990)), Manthey filed no Minnesota resident income tax returns from 1981 until he returned permanently in 1986.

Income earned by resident taxpayers, regardless of its source, is assigned to this state for state income tax purposes. Minn.Stat. § 290.17, subd. 2(1)(a) (1984). The term "resident" means "any individual domiciled in Minnesota." Minn.Stat. § 290.01, subd. 7 (1990). To establish or change one's "domicile" requires one's bodily presence in a place coupled with an intent to make such place one's home. *Miller v. Commissioner of Taxation,* 240

Minn. 18, 19, 59 N.W.2d 925, 926 (1953). Rules promulgated by the Commissioner of Revenue expound on the point further:

[T]he domicile of any person shall be that place in which that person's habitation is fixed, without any present intentions of removal therefrom, and to which, whenever absent, that person intends to return.

A person who leaves home to go into another jurisdiction for temporary purposes only is not considered to have lost that person's domicile. But if a person moves to another jurisdiction with the intention of remaining there permanently or for an indefinite time as a home, that person shall have lost that person's domicile in this state.

Minn.R. 8001.0300, subpt. 2 (1989). No magic formula exists for determining a change in one's domicile, *see e.g., Commissioner of Revenue v. Stamp,* 296 N.W.2d 867, 870 (Minn.1980), but once established, a domicile is presumed to continue until the contrary is shown. Minn.R. 8001.0300, subpt. 2. One may, therefore, live in another state for a period of time without affecting or altering domiciliary status in Minnesota. *See Stamp,* 296 N.W.2d at 870. Because the intent to remain in a fixed place is determinative, mere physical removal is insufficient. The inquiry focuses on intent, examining actions and words to discover that intent. *See Sandberg v. Commissioner of Revenue,* 383 N.W.2d 277, 283 (Minn.1986).

■ The facts here present a close case. *See Stamp,* 296 N.W.2d at 870. *But see Sandberg,* 383 N.W.2d at 278 (taxpayer held domiciliary of Minnesota though spending only 50–60 days each year on property owned in state). That Manthey spent the bulk of his time during those years outside Minnesota reinforces his ex-pressed intention to change his domicile to Alaska. In addition, Manthey enjoyed certain rights peculiar to Alaskan citizens and established social and fraternal relations there. Competing with these facts, however, is Manthey's acceptance and enjoyment of benefits accorded Minnesota residents. Moreover, Manthey's own work-related travels indicate that he intended to remain under the midnight sun only as long as he could work. When work ran out in 1979 and again in 1986, Manthey returned to Minnesota. This conduct alone demonstrates Manthey never intended to uproot himself from Minnesota. The repeal of Alaska's personal income tax law also provides a plausible explanation for Manthey's motivations and actions.

■ As in any civil action, this court does not substitute its judgment for that of the tax court on questions of fact, leaving the factual findings undisturbed where the evidence, as a whole, supports the decision. *Busch v. County of Hennepin,* 380 N.W.2d 813, 815 (Minn.1986); *United States Steel Corp. v. Commissioner of Taxation,* 303 Minn. 143, 148, 226 N.W.2d 870, 873 (1975). None of the facts escape equivocation entirely, and the tax court could easily have ruled the other way. The tax court sits in a better position to judge credibility and sincerity, and its decision is supported by the evidence as a whole. *See Stamp,* 296 N.W.2d at 870.

Affirmed.