No. 96-398

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

JACK G. PLETCHER,

     Petitioner and Appellant,

  v.

MONTANA DEPARTMENT OF REVENUE,

     Respondent and Respondent.

FILED

DEC 31 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Katherine R. Curtis, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        James M. Ramlow; Kaufman, Vidal & Hileman,
        Kalispell, Montana

    For Respondent:

        Deborah Harten, Tax Counsel, Special Assistant
        Attorney General, Montana Department of Revenue,
        Helena, Montana

Submitted on Briefs:  November 7, 1996

Decided:  December 31, 1996

Filed:

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

The Montana Department of Revenue (Department) assessed taxes, interest and penalty against the appellant, Jack G. Pletcher (Pletcher), for Montana income earned from his employment in Alaska during the years 1982 through 1992. Pletcher appealed the assessment to the State Tax Appeal Board (STAB), which ruled that he was a resident of Montana for income tax purposes during that period of time. Pursuant to the Montana Administrative Procedure Act, Pletcher then requested judicial review of the STAB ruling in the Eleventh Judicial District Court. He appeals from the District Court ruling that he was a resident of Montana for income tax purposes. We affirm the decision of the District Court.

## Factual Background

The facts as they were developed by the Department's hearings examiner and again by STAB are as follows:

Pletcher was employed by Udelhoven Oilfield System Services, Inc. on the Alaska North Slope from September, 1981 to October, 1992. During that period of time, Pletcher lived and worked in Alaska, visiting his wife and children in Columbia Falls, Montana, during regularly scheduled leave periods.

Pletcher's Alaska work for Udelhoven was full time. Within a few years he assumed managerial responsibilities for Udelhoven. Udelhoven supplied general contracting services, including construction and maintenance for ARCO and British Petroleum facilities on the Prudhoe Bay and Kuparuk River "reservations" on

the Alaska North Slope. Pletcher supervised as many as 100 employees at a time and took charge, from 1986 to 1989, of Udelhoven's entire North Slope operations. From 1989 to 1992, he acted as its senior project manager.

STAB concluded that Pletcher's presence in Alaska was not for the purpose of taking on a series of "temporary" jobs.

> He was in fact a permanent employee, for employment purposes, working the same periods, shifts, and hours as other employees of this company . . . . The Board agrees with [Pletcher] that he was not taking on some seventy to eighty separate "temporary" jobs for the same employer at the same location over an eleven year period.

Prior to 1982, Pletcher lived in Columbia Falls, Montana, with his wife and children and filed Montana resident income tax returns. During his decade of employment in Alaska, Pletcher made regular trips to Montana to stay with his family in Columbia Falls. These trips, with one exception, never exceeded more than two and one-half weeks. He continued in this routine until Udelhoven's North Slope operations terminated in 1992. In September, 1991, while on a visit to Montana, Pletcher purchased a Montana nonresident fishing license.

Pletcher spent the majority of his time in Alaska. He had a permanent apartment unit for his private residence and storage on the North Slope. Pletcher was assigned his own company vehicle and oilfield identity cards which were required in place of an Alaska driver's license.

During his eleven years of employment in Alaska, Pletcher filed federal income tax returns, but did not file Montana income tax returns on his Alaska earnings, having been advised by his

3

accountant that Montana returns were not required. Pletcher did not pay state income tax on his Alaska earnings because Alaska does not levy such a tax. In November of 1991, the Montana Department of Revenue sent an inquiry letter to Pletcher requesting that he file returns for the years 1985 through 1990 or explain why he had not filed those returns. Pletcher responded by explaining that he had been absent from Montana for more than half of each of those years, had earned all of his income outside of Montana, and had declared himself a nonresident on a Montana conservation license earlier that year.

In January of 1992, Pletcher filed 1985 through 1990 Montana income tax returns jointly with his wife. The returns listed Pletcher as a part-year resident of Montana. Subsequently, Pletcher filed amended returns for those years showing his filing status as married, filing separately, nonresident. He filed similar nonresident returns for the years 1983, 1984, and 1991. The Department adjusted all of the returns to reflect full-year residence status and assessed Montana income taxes, interest and penalties accordingly.

### Standard of Review

The District Court was called upon to determine whether STAB's conclusion of law that Pletcher was subject to Montana state income tax on his earnings in Alaska was correct. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 803 P.2d 601. Likewise, we review the district court's interpretation to determine whether it correctly applied the law. Isaak v. Smith

4

(1993), 257 Mont. 176, 848 P.2d 1014 (overruled on other grounds).

The issue presented for our resolution is as follows:

Did the District Court err by finding that, although Pletcher was a full-time, permanent employee in Alaska, he was still liable for payment of Montana income taxes on his Alaska wages because he still maintained a domicile in the state of Montana?

## Discussion

Resolution of this appeal hinges on a determination as to whether Pletcher, during the years that he worked in Alaska, was a resident of Montana under the provisions of § 15-30-101(16), MCA, which states:

(16) "Resident" applies only to natural persons and includes, for the purpose of determining liability to the tax imposed by this chapter with reference to the income of any taxable year, any person domiciled in the state of Montana and any other person who maintains a permanent place of abode within the state even though temporarily absent from the state and who has not established a residence elsewhere.

Pletcher contends that the finding by the Department and STAB that he was permanently employed in Alaska on a full-time basis inescapably leads to the conclusion that his absence from Montana was not "temporary" and thus he does not fit within the § 15-30-101(16), MCA, definition of a "resident" subject to tax. We reject Pletcher's contention that permanent employment out of state necessarily translates to permanent absence from the state.

Section 15-30-101(16), MCA, clearly provides that "resident" includes all other persons who have a "permanent place of abode" in the state of Montana. The Department's regulations define "permanent place of abode" as a dwelling place permanently

5

maintained in Montana which he habitually uses as his home. ARM 42.15.104. The agency's interpretation of a statute governing its operations is entitled to deference from this Court. Department of Revenue v. Kaiser Cement Corp. (1990), 245 Mont. 502, 803 P.2d 1061.

Although Pletcher maintained permanent employment in Alaska, the record is clear that he came to his home in Columbia Falls when he did not have to work. Columbia Falls was the home he established before he went to Alaska and is the home in which his wife and family continued to reside in his absence.

Section 1-1-215(1), MCA, provides that a residence is where a person remains when not called elsewhere for labor or other special or temporary purposes and to which he returns in seasons of repose. Further, one's domicile is not lost until another is gained. ARM 42.15.102(1), provides as follows:

A domicile, once established, continues until abandoned and a new one acquired. A change in domicile is accomplished only by a union of act and intent. There must be intent to change one's domicile, actual removal, and acquisition of a new domicile. Domicile is not changed by temporary absence or by absence for a special or particular purpose.

In the present case, although Pletcher worked in Alaska, his ties to Alaska were strictly work-related. The record does not evidence any intent on the part of Pletcher to change his domicile from Montana to Alaska. Pletcher and his wife continued their ownership of the home and farm at Columbia Falls and his wife and family remained on the farm throughout the entire period. Pletcher kept his Montana driver's license all eleven years he was in Alaska

6

and his name remained with his wife's name on certain Montana bank accounts.

Section 15-30-132, MCA, provides "[i]f a resident obtains employment outside the state, income from such employment is taxable in Montana." When this statutory provision is read in conjunction with § 15-30-101(16), MCA, it is clear that the legislature meant to tax residents of this state who work outside the state but maintain a domicile or residence in the state of Montana. Pletcher's contention that he can maintain his domicile within the state of Montana and hold down permanent employment outside the state of Montana free of Montana taxation would defeat this clear legislative intent.

The legislative intent is further buttressed by the provisions of § 1-1-215, MCA, which provide:

**Residence -- rules for determining.** Every person has, in law, a residence. In determining the place of residence the following rules are to be observed:
(1) It is the place where one remains when not called elsewhere for labor or other special or temporary purpose and to which he returns in seasons of repose.
(2) There can only be one residence.
(3) A residence cannot be lost until another is gained.
. . . .
(6) The residence can be changed only by the union of act and intent.

The record indicates that Montana was the state in which Pletcher remained when he was not called elsewhere for labor and to which he returned in seasons of repose. We also note that during tax years 1983, 1984 and 1986, Pletcher claimed money spent on airline tickets to Alaska as away-from-home business expenses.

The Department relies on a decision from the Minnesota Supreme

7

Court, Manthey v. Commissioner of Revenue (Minn. 1991), 468 N.W.2d 548. The Minnesota Supreme Court concluded that Manthey was a Minnesota taxpayer because he had maintained significant ties with Minnesota while working in Alaska. While he was employed in Alaska, Manthey supplied financial support for his wife and two children in Minnesota; he maintained his Minnesota driver's license; owned, licensed and registered vehicles in the state of Minnesota; purchased resident hunting licenses in the state of Minnesota; purchased and maintained rental property; and kept joint checking accounts in Minnesota. Manthey, 468 N.W.2d at 549.

Pletcher's argument is even less compelling than Manthey's in that Manthey had established stronger ties to the state of Alaska; he obtained an Alaska driver's license; performed jury duty in Alaska; joined fraternal organizations, registered and licensed his car and trailer in Alaska; purchased Alaska resident hunting and fishing licenses and purchased Alaskan real estate. Manthey, 468 N.W.2d at 549. Pletcher, on the other hand, cannot make any of these claims. Although he did register to vote in Alaska, he did not do so until 1992, some nine months after the Montana Department of Revenue questioned his residency status. Furthermore, he never did exercise his right to vote in Alaska. Pletcher's purchase of a non-resident conservation and fishing license in Montana in September of 1991 was approximately two months prior to the Department's inquiry into his tax returns.

We hold that the District Court correctly interpreted the phrase "temporarily absent from the state" as it is used in § 15-

8

30-101(16), MCA, as modifying persons domiciled in the state of Montana and who maintain a permanent place of abode in Montana. Pletcher's permanent employment in Alaska does not equate to permanent absence from the state. The record supports the finding that Pletcher has maintained a permanent abode in Montana to which he has returned when he is not working in Alaska. Accordingly, the decision of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

9

Justice Terry N. Trieweiler dissenting.

I dissent from the majority's conclusion that Jack G. Pletcher was a resident of Montana for purposes of income tax liability during the years 1982 through 1992. In order to arrive at that conclusion, the majority has necessarily had to extract a portion of the applicable residency statute and completely ignore the remaining language in the same statute.

The only relevant definition of "residency," for purposes of determining whether Pletcher was a resident during the years at issue, is the definition found in Montana's Income Tax Code at § 15-30-101(16), MCA. That section provides that:

> "Resident" applies only to natural persons and includes, for the purpose of determining liability to the tax imposed by this chapter with reference to the income of any taxable year, any person domiciled in the state of Montana and any other person who maintains a permanent place of abode within the state even though <u>temporarily absent</u> from the state <u>and who has not established a residence elsewhere</u>.

(Emphasis added.)

The majority opinion uses "domiciled" and "person who maintains a permanent place of abode" interchangeably. "Domicile" is not otherwise defined in the majority opinion. Therefore, the discussion in the dissent is limited to the conclusion on which the majority's decision is based. That conclusion is that: "Section 15-30-101(16), MCA, clearly provides that 'resident' includes all other persons who have a 'permanent place of abode' in the state of Montana."

10

The majority completely ignores the remainder of the definition which further limits residency to those who are "temporarily absent from the state" and have "not established a residence elsewhere." (Emphasis added.) In other words, if Pletcher was located in Alaska permanently, or if he had established residency in Alaska, it makes no difference that he had a permanent place of abode in Montana.

In spite of this plain language, neither the Department of Revenue's hearing examiner, the State Tax Appeal Board, the District Court, nor the majority, have even considered the residency requirements for Alaska, or whether Pletcher satisfied those requirements. An examination of Alaska's residency requirement leads to the conclusion that Pletcher clearly was a resident of Alaska. Alaska Stat. § 01.10.055 (1983) provides as follows:

> (a) A person establishes residency in the state by being physically present in the state with the intent to remain in the state indefinitely and to make a home in the state.
> (b) A person demonstrates the intent required under (a) of this section
> (1) by maintaining a principal place of abode in the state for at least 30 days or for a longer period if a longer period is required by law or regulation; and
> (2) by providing other proof of intent as may be required by law or regulation, which may include proof that the person is not claiming residency outside the state or obtaining benefits under a claim of residency outside the state.
> (c) A person who establishes residency in the state remains a resident during an absence from the state unless during the absence the person establishes or claims residency in another state, territory or country, or performs other acts or is absent under circumstances that are inconsistent with the intent required under (a) of this section to remain a resident of this state.

11

Pletcher satisfied all the requirements for residency in the state of Alaska. He was employed there for over ten years on a full-time basis. He had a permanent apartment there (private homes were not available). He spent seven to eight months per year in Alaska during this entire time, and visited his family in Columbia Falls during only those brief periods when he was granted leave. His permanent return to Montana had not been planned. It occurred because his employer's operations terminated in 1992. In the terms of the statute, he was physically present in the state with the intent to remain in the state indefinitely, as demonstrated by the fact that his principal place of abode was in that state for more than thirty days, and other than a brief period during 1983, he did not claim residency outside of the state for purposes of obtaining benefits.

The State Tax Appeal Board (STAB) specifically found that:

It is clearly recognized that Mr. Pletcher was not in Alaska for temporary employment purposes. He was in fact a permanent employee, for employment purposes, working the same periods, shifts, and hours as other employees of this company, according to the evidence that has been presented to the Board. The Board agrees with the taxpayer that he was not taking on "some seventy to eighty separate 'temporary' jobs for the same employer at the same location over an eleven year period."

Therefore, based on the STAB's own finding, Pletcher was not out of the state temporarily.

The majority completely ignores those parts of § 15-30-101(16), MCA, which link residency in Montana to a "temporary absence" from the state, and which exclude from residency those persons who have established a residence elsewhere.

12

Instead, the majority discusses those factors set forth in § 1-1-215(1), MCA; § 42.15.102(1), ARM, which describes how a new domicile is acquired; and the Minnesota Supreme Court's decision in *Manthey v. Commissioner* of Revenue (Minn. 1991), 468 N.W.2d 548.

Those factors for determination of residency which are set forth in § 1-1-215(1), MCA, are irrelevant. Residency for purposes of income tax liability is specifically defined in Montana's Tax Code at § 15-30-101(16), MCA.

The discussion at § 42.15.102(1), ARM, regarding the method for changing domicile, sheds no light on the issue before the Court because domicile is not defined, and if it is being used interchangeably with residency, it is clear that Pletcher changed his domicile by intending to do so and actually removing himself from Montana and acquiring a new domicile. Furthermore, as is apparent from the previous discussion, his absence from this state was by no means temporary.

Finally, the Minnesota Supreme Court's decision in *Manthey* is irrelevant to the discussion in this case because that decision was not based on a statutory definition of residency similar to the Montana Tax Code's definition, by which we are bound.

The majority also attaches some significance to the fact that during tax years 1983, 1984, and 1986 Pletcher claimed that the money spent on airline tickets to Alaska were "away-from-home business expenses." That fact has no significance. Presumably, the tickets provided round-trip transportation, and since Pletcher

13

owned a sheep ranch in Montana, the travel would have been business related regardless of which location he considered his home.

I conclude that to recover income taxes from persons whose sole source of income is derived outside the state of Montana, the Department of Revenue must prove that that person is temporarily absent from the state _and_ has not established residency elsewhere. In this case, it was clearly established that Pletcher was permanently absent from the state and had established a residence elsewhere. Therefore, I dissent from the majority opinion. I would reverse the judgment of the District Court.

_____
Justice

14