STATE OF MINNESOTA

IN SUPREME COURT

A24-0547

Tax Court                                                                    McKeig, J.
                                                     Took no part, Procaccini, J.

Angeline R. Brozovich and Frank V. Brozovich,

          Relators,

vs.                                                              Filed: March 5, 2025
                                                        Office of Appellate Courts
Commissioner of Revenue,

          Respondent.

_____

Angeline R. Brozovich and Frank V. Brozovich, Rochester, Minnesota, pro se.

Keith Ellison, Attorney General, Joseph Weiner, Assistant Attorney General, Saint Paul, Minnesota, for respondent.

_____

S Y L L A B U S

1.      The tax court has jurisdiction to decide cases arising under Minnesota tax law that incorporate federal tax law.

2.      The tax court did not err when it determined that the taxpayer was not a real estate professional.

3.      The tax court did not err when it exercised its discretion and found some of relators' claimed deductions unsupported by the evidence offered.

Affirmed.

Considered and decided by the court without oral argument.

1

O P I N I O N

McKEIG, Justice.

This case is an appeal from an order of the Minnesota Tax Court. Relators Angeline and Frank Brozovich appealed a tax order (Commissioner's Order) issued by respondent Commissioner of Revenue (the Commissioner). The Commissioner assessed the Brozoviches $10,864.58 in unpaid individual income tax, penalties, and interest for tax years 2019 and 2020. The assessment was based on a finding that the Brozoviches improperly deducted over $105,000 in losses related to their residential real estate in Bainbridge Island, Washington.

The primary issue before the tax court was whether Angeline[1] qualified as a "real estate professional" under Internal Revenue Code § 469(c)(7)(B) for tax years 2019 and 2020.[2] The Brozoviches presented testimony and evidence to the tax court during a one-day trial. The tax court determined that Angeline did not qualify as a real estate professional because she failed to submit credible evidence that she met the minimum requirement of 750 hours or more on qualifying services in support of renting the Bainbridge Island Property during the years at issue. *Brozovich v. Comm'r of Revenue*,

---

[1]     This opinion refers to Angeline by her first name to avoid confusion since she and her husband, who is also a party to the matter, share a last name. When referenced together, the parties are called "the Brozoviches."

[2]     The statute refers to "taxpayers in real property business" rather than "real estate professionals." I.R.C. § 469(c)(7). The term "real estate professional" derives from Schedule E of IRS Form 1040 (line 43) and is frequently used by the United States Tax Court when analyzing this statute. The Commissioner, tax court, and parties adopted this term throughout their decisions and briefs; we do the same.

No. 9545-R, 2024 WL 1149366, at *5–7 (Minn. T.C. Mar. 8, 2024). The tax court also determined the validity of other deductions stemming from renting the property to the Brozoviches' son, credit card interest payments, and a lawncare payment. *Id.* at *8–9. The tax court concluded that all three deductions were improperly claimed. *Id.* The Brozoviches submitted a petition for writ of certiorari requesting review of the tax court's decision. For the reasons stated below, we affirm the tax court's decision in full.

**FACTS**

***The Bainbridge Island Property and the Brozoviches' Claimed Losses***

Along with their primary residence in Minnesota, Angeline and Frank Brozovich own a single-family home on almost half an acre on Bainbridge Island in the state of Washington (Bainbridge Island Property). During 2019 and 2020, they rented out the Bainbridge Island Property four times. The rental periods totaled 48 nights, 34 of which were rentals to immediate family members, and generated approximately $2,840.

The Brozoviches timely filed Minnesota income tax returns for 2019 and 2020. They deducted over $105,000 in losses associated with their rental real estate business.

In February 2022, the Commissioner audited the Brozoviches' real estate-related expense deductions and consequent losses. The audit focused on whether Angeline qualified as a real estate professional under I.R.C. § 469(c)(7). As described more fully below, meeting this qualification would have allowed Angeline an exemption to the general rule that rental activities are per se passive, and she could have offset the Brozoviches' regular income during the years in issue by deducting property-related losses. *See id.*, §§ 461(a), 469(c)(2).

3

*Relevant Tax Law*

Taxpayers are allowed deductions for certain business and investment expenses under I.R.C. §§ 162 and 212.  Generally, an individual is not entitled to a deduction for a passive activity loss for the year in which that loss is sustained.  *See* I.R.C. § 469(a).  A passive activity is an activity involving conduct of a trade or business in which the taxpayer does not materially participate.  I.R.C. § 469(c)(1).  Except as provided in section 469(c)(7), the term "passive activity" includes any rental activity regardless of whether the taxpayer materially participates.  I.R.C. § 469(c)(2), (4).

Section 469(c)(7) provides that rental activities of certain taxpayers in real property trades or businesses are not per se passive activities under section 469(c)(2) but are treated as a trade or business subject to the material participation requirements of I.R.C. § 469(c)(1)(B).  Under section 469(c)(7), real estate owned by the taxpayer but rented to a third party is not considered passive if, and only if, the taxpayer meets two requirements:

(i)    more than one-half of the personal services performed in trades or businesses by the taxpayer during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates, and

(ii)    *such taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates.*

I.R.C. § 469(c)(7)(B)(i–ii) (emphasis added).  If both elements are met, the taxpayer may then deduct any losses the taxpayer has incurred from rental real estate.  *See* I.R.C. § 469(a)–(c).  The primary issue in this case is whether Angeline qualified as a real estate professional, which required that she perform the requisite number of hours of services.

4

*The Audit*

During the audit examining whether Angeline qualified as a real estate professional under I.R.C. § 469(c)(7), the Brozoviches submitted two sets of data to the Commissioner. On March 4, 2022, they provided approximately 180 pages of documentation relating to their real estate business. Angeline included two spreadsheets documenting her hours. The spreadsheets indicated that Angeline worked on rental real estate activities for 148.5 hours in 2019 and 89.75 hours in 2020. Nothing in this documentation mentioned a separate or additional work record associated with her rental real estate business. Instead, the Brozoviches stated that "[d]ue to the size of this single island cottage rental, all accounting and business records are maintained on a computer spreadshe[e]t, supported by vendor receipts and notations." On March 26, 2022, the Brozoviches sent additional documentation to the Commissioner, but again they did not reference an additional work record.

On April 5, 2022, the Commissioner requested that the Brozoviches clarify the conditions they used to classify Angeline as a real estate professional. On April 26, 2024, the Brozoviches submitted a handwritten journal entitled "Happy Mom Homes! Real Estate Journal" (the Journal). It contained entries indicating that Angeline worked on services related to their rental real estate business 817.5 hours[3] in 2019 and 932.5 hours in 2020.

---

[3]    In their brief, the Brozoviches represent that the log should have listed 823.75 hours instead of 817.5 hours in 2019. They state the error was attributable to a mathematical error. Assuming an error was made, it does not affect our determination.

On July 6, 2022, the Commissioner issued the Commissioner's Order adjusting the Brozoviches' individual income tax liability, specifically removing property-related deductions for tax years 2019 and 2020. The Commissioner found that Angeline did not qualify as a real estate professional based on the activities listed in the Journal. Thus, her real estate activity was passive activity, and the related losses were properly characterized as passive activity losses under I.R.C. § 469(c)(2). As a result, the losses could not be used to offset the Brozoviches' regular income. The Commissioner then determined that they owed an additional $10,864.58 in unpaid tax, penalties, and interest for 2019 and 2020.

### *The Tax Court Trial*

On August 30, 2022, the Brozoviches timely appealed the Commissioner's Order to the tax court. The tax court held a trial in October 2023. The primary dispute concerned whether Angeline qualified as a real estate professional who materially participated in operating the Bainbridge Island Property as a rental, thereby entitling the Brozoviches to nonpassive activity loss deductions. The tax court issued findings of fact, determining that in both 2019 and 2020 Angeline "did not spend 750 hours or more on qualifying services in support of renting the Bainbridge Island Property." *Brozovich*, 2024 WL 1149366, at *1. In applying the law to these factual findings, the tax court concluded that Angeline did not qualify as a real estate professional for either tax year 2019 or 2020 because she failed to meet the hour requirement. *Id.*

The tax court explained its reasoning in an accompanying memorandum. The tax court considered evidence that the Journal, which recorded Angeline's hours worked during the years at issue, was not credible. *Id.* at *5–6. The tax court expressed "serious

6

doubts" regarding the "legitimacy" of the Journal because it was produced at the "eleventh-hour" and conflicted with the previously submitted work logs. *Id.* at *5. The tax court noted that the Brozoviches had previously submitted materials to the Commissioner on two occasions without mentioning a separate work record. *Id.* at *6. It found that the Brozoviches' March 4, 2022 statement that all accounting and business records were *digitally* maintained further undermined the Journal's legitimacy . *Id.* The Journal is a *handwritten* account of the dates, activities, and hours spent on those activities in support of Angeline's status as a real estate professional. The tax court found it "important[]" that the Brozoviches first provided the Journal "after being prompted by the Commissioner to substantiate [Angeline's] qualifications as a real estate professional." *Id.*

The tax court stated that even if it were to assume the Journal was accurate, many hours Angeline recorded in it "are not reasonably related to rental activity." *Id.* at *5. In 2019, the hours and activities the tax court found insufficiently related to rental activity included: (1) at least 90 hours reading about 1031 exchanges,[4] (2) at least 114.25 hours researching new listings on Bainbridge Island as well as in Sun Valley, Hailey, and Jerome, Idaho, and (3) 19 hours reading the Wall Street Journal. The hours and activities the tax court found were insufficiently related to rental activity in 2020 included: (1) 101 hours researching the real estate market generally, including new listings on Bainbridge Island and in Idaho, and (2) at least 289 hours purchasing, cutting, and sewing various textiles for

---

[4]  A 1031 like-kind exchange is a real estate transaction that allows the cost basis of one property to transfer to a qualifying replacement property, thereby delaying any capital gains tax on the transferred basis. *See* I.R.C. § 1031(a)(1).

the Bainbridge Island Property. As to Angeline's textile work, the tax court found that although some amount of maintenance is reasonable, the time Angeline alleged she spent on textiles was unreasonable. *Id.* at *7. The tax court rejected the other activities outright as insufficiently related to the rental business. *Id.* The tax court restated its conclusion that Angeline did not qualify as a real estate professional in either 2019 or 2020 because she failed to meet the hour requirement. *Id.*

Along with deciding the primary dispute, the tax court resolved three additional issues. It determined that: (1) the Brozoviches' son's occupancy of the property was for personal use, and thus resulting losses could not be deducted, (2) the Brozoviches did not establish that their interest payments were deductible because they did not produce evidence to support their claim, and (3) although the Brozoviches delivered a lawncare payment for the Bainbridge Island Property in 2019, it was not deductible because it was an expense that resulted from passive activity.[5] *Id.* at *8–9.

---

[5] The Brozoviches appealed the tax court's determination that they could not deduct a payment for lawncare services in 2019. In their brief, however, the Brozoviches do not identify a factual or legal error the tax court made related to this deduction. "[O]n appeal error is never presumed. It must be made to appear affirmatively before there can be reversal. . . . [T]he burden of showing error rests upon the one who relies upon it." *Midway Ctr. Assocs. v. Midway Ctr., Inc.*, 237 N.W.2d 76, 78 (Minn. 1975) (quoting *Waters v. Fiebelkorn*, 13 N.W.2d 461, 464–65 (Minn. 1944)). An assignment of error in a brief based on "mere assertion" and not supported by argument or authority is waived unless prejudicial error is obvious on mere inspection. *State v. Andersen*, 871 N.W.2d 910, 915 (Minn. 2015) (quoting *State v. Yang*, 774 N.W.2d 539, 552 (Minn. 2009)). As this issue was not adequately briefed and there is no prejudicial error obvious on mere inspection, we will not consider the Brozoviches' argument regarding the lawncare payment.

The Brozoviches filed a petition for writ of certiorari asking our court for review. In addition to seeking review of the tax court's decision, the Brozoviches argued that the tax court lacks jurisdiction to resolve their claims.[6]

For the following reasons, we conclude the tax court had jurisdiction, and we affirm the tax court's decision.

**ANALYSIS**

Our review of the tax court's decision is "limited and deferential." *Minn. Energy Res. Corp. v. Comm'r of Revenue*, 886 N.W.2d 786, 792 (Minn. 2016). "We review tax court decisions to determine whether the tax court lacked subject matter jurisdiction, whether the tax court's decision is supported by evidence in the record, and whether the tax court made an error of law." *Hohmann v. Comm'r of Revenue*, 781 N.W.2d 156, 157 (Minn. 2010). "We review the tax court's legal determinations de novo and its factual findings for clear error." *Minn. Energy Res. Corp.*, 886 N.W.2d at 792.

I.

As a threshold matter, the Brozoviches argue that the tax court lacked jurisdiction to rule on the questions of law and fact pertaining to I.R.C. § 469. Issues of jurisdiction are legal ones that we review de novo. *Soyka v. Comm'r of Revenue*, 834 N.W.2d 711, 713 (Minn. 2013). The Brozoviches assert that their ability to classify Angeline as a real estate

---

[6] During briefing, the Brozoviches moved to supplement the record, asking us to consider their 2020 Schedule E (Form 1040). Although listed on their joint exhibit list before the tax court, the Brozoviches mistakenly submitted another tax form. Because the record sufficiently addressed the contents of the 2020 Schedule E (Form 1040) and because reviewing it would not affect our determination regarding the tax court's factual findings, we deny the motion to supplement the record.

professional and claim related deductions is based on federal tax law rather than state tax law, and thus the tax court lacked jurisdiction to resolve their dispute.[7]  This argument misconstrues the relationship between the relevant federal and state tax statutes.

In general, the Minnesota Tax Court is the "sole, exclusive, and final authority for the hearing and determination of all questions of law and fact arising under the tax laws of the state . . . ."  Minn. Stat. § 271.01, subd. 5 (2024).  The tax court has "no jurisdiction in any case that does not arise under the tax laws of the state . . . ."  *Id.*  State tax law, however, incorporates some provisions of federal tax law.  *See, e.g.*, Minn. Stat. § 290.01 (2024) (defining terms with reference to federal tax law).  The tax court has jurisdiction to review these federal tax provisions that have been incorporated into state law.  *See Bond v. Comm'r of Revenue*, 691 N.W.2d 831, 838 (Minn. 2005) (explaining that "although Minnesota gross income is defined as federal adjusted income," Minnesota independently assesses this amount).  Although the Minnesota Statutes do not directly reference the concepts of "passive activity" or "passive activity loss," we have held that the federal provisions governing these concepts are incorporated into Minnesota law to the extent they affect the calculation of federal taxable income, which a taxpayer must use when calculating his or her Minnesota tax liability.[8]  *See Billion v. Comm'r of Revenue*, 827 N.W.2d 773, 779 (Minn. 2013).

---

[7]  On October 11, 2023, in a Joint Stipulation of Facts, the Brozoviches stipulated that they "timely appealed the [Commissioner's] Order to the Minnesota Tax Court.  The Minnesota tax court has jurisdiction over the appeal therefrom."

[8]  The Brozoviches themselves state that Minnesota tax law may incorporate federal tax law, and they acknowledge that it has done so in this context.

This case arose from the calculation of the Brozoviches' taxable net income under state tax law. For individual taxpayers, "net income" is defined as federal adjusted gross income, except as may be modified by specific Minnesota statutes. Minn. Stat. § 290.01, subd. 19(b). In calculating their taxable net income, the Brozoviches claimed certain losses pursuant to I.R.C. § 469. The tax court may consider application of I.R.C. § 469 to the extent it impacts calculating the Brozoviches' federal taxable income, which is necessary to calculate their Minnesota tax liability. Therefore, the tax court had jurisdiction to decide this case.

## II.

We next address whether the tax court erred when it concluded that Angeline was not a real estate professional under I.R.C. § 469(c)(7) because she did not meet the 750-hour requirement.

We afford the tax court broad discretion to rely on or disregard the evidence presented at trial, particularly when credibility is at issue. *Inland Edinburgh Festival, LLC v. County of Hennepin*, 938 N.W.2d 821, 826 (Minn. 2020); *see also Eden Prairie Mall, LLC v. County of Hennepin*, 830 N.W.2d 16, 20–21 (Minn. 2013). "The tax court sits in a better position to judge credibility and sincerity," and we review its decision to determine whether it is supported by the evidence as a whole. *Manthey v. Comm'r of Revenue*, 468 N.W.2d 548, 550 (Minn. 1991); *accord Antonello v. Comm'r of Revenue*, 884 N.W.2d 640, 647 (Minn. 2016). We will not disturb the tax court's factual findings unless they are clearly erroneous, that is, if "upon reviewing the entire evidence," we are left with a "firm

11

conviction that a mistake has been made." *Krech v. Comm'r of Revenue*, 557 N.W.2d 335, 338 (Minn. 1997) (citations omitted) (internal quotation marks omitted).

The tax court found that in 2019 and 2020, "Ms. Brozovich did not spend 750 hours or more on qualifying services in support of renting the Bainbridge Island Property." *Brozovich*, 2024 WL 1149366 at *1. The tax court expressed "serious doubts concerning [the Journal's] legitimacy" for several reasons. *Id.* at *5. First, the Journal conflicted with a separate set of spreadsheets that the Brozoviches initially submitted to the Commissioner. Differences in the number of work hours performed, the dates on which work was performed, the description of work performed on individual dates, and the number of hours spent working on specific dates existed between the two logs. Second, the Brozoviches produced the Journal only after they had already exchanged correspondence with the Commissioner several times. Before the Commissioner's inquiry into the conditions that the Brozoviches used to classify Angeline as a real estate professional, they had not identified the existence of a Journal, nor had they suggested that Angeline worked additional hours outside of those recorded in the spreadsheets they submitted on March 4, 2022. The tax court described the Journal's submission as an "eleventh-hour production." *Id.* It noted that the Brozoviches' failure to mention the Journal in previous communications with the Commissioner and its late production were "[i]mportant[]." *Id.* at *6. These facts would not be important unless the tax court were finding the Journal incredible. Third, the Brozoviches represented to the Commissioner that "[d]ue to the size of this single island cottage rental, all accounting and business records are maintained on a

12

computer spreadshe[e]t, supported by vendor receipts and notations," but the Journal is a *handwritten* log of activities that Angeline alleges she performed. *Id.*

With no other evidence besides the Journal to support the Brozoviches' claim that Angeline met the 750-hour requirement in either 2019 or 2020, we affirm the tax court's factual finding that Angeline did not spend 750 hours or more on qualifying services, and also affirm the conclusion that Angeline did not meet the requirements to qualify as a real estate professional.

III.

The Brozoviches also challenge the tax court's determinations that (1) they cannot deduct losses from renting the Bainbridge Island Property to their son because they did not produce sufficient evidence that they charged him market rent, and (2) they cannot deduct their 2019 and 2020 credit card interest payments because they did not produce sufficient evidence that the interest paid represented finance charges associated with purchases made for the Bainbridge Island Property. We affirm the tax court on both issues.

We will not disturb the tax court's factual findings unless they are clearly erroneous, that is, when "the evidence as a whole does not reasonably support the decision." *Perham Hosp. Dist. v. County of Otter Tail*, 969 N.W.2d 366, 370 (Minn. 2022) (citations omitted) (internal quotation marks omitted). We will not conclude that the tax court clearly erred unless, "upon reviewing the entire evidence," we are "left with a firm conviction that a mistake has been made." *Krech*, 557 N.W.2d at 338 (citation omitted) (internal quotation marks omitted). We give deference to the tax court's role as the factfinder, particularly in weighing evidence and assessing the credibility of witnesses. *See Medline Indust., Inc. v.*

13

*County of Hennepin*, 941 N.W.2d 127, 131 (Minn. 2020) (stating that it is the factfinder's role to "weigh the evidence and assess the credibility of the witnesses" (citation omitted) (internal quotation marks omitted)); *see also Dreyling v. Comm'r of Revenue*, 711 N.W.2d 491, 494 (Minn. 2006) (affording due regard to the tax court being in the "best position to evaluate the credibility of witnesses").

## A.

As to the first issue, the tax court determined that the Brozoviches' son's occupancy was personal use, rather than attributable to their rental business, because they did not charge him the fair market rent. In general, taxpayers may not deduct losses from a dwelling unit if the property is used as residential real estate by the taxpayers or members of their families. I.R.C. § 280A(a), (d)(2)(A). However, a "taxpayer shall not be treated as using a dwelling unit for personal purposes by reason of a rental arrangement for any period if for such period such dwelling unit is rented, *at a fair rental*, to any person for use as such person's principal residence." *Id.*, § 280A(d)(3)(A) (emphasis added).

The Brozoviches rented the Bainbridge Island Property to their son from June 1 to 24, 2020, for $1,000. The Brozoviches testified that they based their conclusion that $1,000 for 24 days (plus mowing) was market rent by asking around at local shops and consulting statistics from the Department of Housing and Urban Development. The tax court concluded that the evidence did not support the claim because neither was an adequate method for determining a market rate. Specifically, the tax court explained that the HUD statistics the Brozoviches proffered were unconvincing because the statistics addressed rates for apartment units while the Bainbridge Island Property is a complete ocean-side

14

vacation rental home. The tax court therefore concluded that the Brozoviches presented no evidence of relevant market rental rates to support the amount they charged their son. In making this determination, the tax court exercised its proper authority to determine the weight and credibility of the evidence the Brozoviches' offered to support their claim. *See Menard, Inc. v. County of Clay*, 886 N.W.2d 804, 813 (Minn. 2016). Before our court, the Brozoviches do not explain how the tax court erred in determining the weight and credibility of the evidence. Because the Brozoviches have not shown that this determination constitutes clear error, we affirm the tax court's decision.

B.

Regarding their credit card interest payments, the tax court determined that the Brozoviches did not produce evidence to prove that these payments were deductible as finance charges associated with purchases made for the Bainbridge Island Property. The Brozoviches submitted credit card bills and an Excel spreadsheet of credit card payments to the tax court. The court explained these documents did not demonstrate *how* their payments were applied between personal and business expenses. Before our court, the Brozoviches explain the details of the credit card statements and the Excel spreadsheet they submitted to the tax court. They do not, however, explain *why* the tax court committed clear error in its finding that the documents were insufficient evidence for them to meet

their burden of proof,[9] nor do they suggest other evidence in the record helps them meet their burden.  We therefore affirm the tax court's decision.

CONCLUSION

For the foregoing reasons, we affirm the decision of the tax court.

Affirmed.

PROCACCINI, J., took no part in the consideration or decision of this case.

---

[9] The Brozoviches forfeited their final claim—whether the substantial understatement penalty was improperly imposed because their audit was prematurely completed—because it was not raised before the tax court.  This argument does not appear anywhere in the record until the Brozoviches submitted their statement of the case to our court.  Ordinarily, we will not consider issues raised for the first time on appeal.  *State v. Williams*, 794 N.W.2d 867, 874 (Minn. 2011); *see also Tamarack Vill. Shopping Ctr., LP v. County of Washington*, 9 N.W.3d 820, 835 n.15 (Minn. 2024).